CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE. VA
FILED
APR 2 2 2009
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| JOHNNIE SMITH, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:08cv00030** |
| v. | ) | |
| | ) | |
| THE JAMES C. HORMEL SCHOOL | ) | |
| OF THE VIRGINIA INSTITUTE OF | ) | |
| AUTISM | ) | **By: Michael F. Urbanski** |
| | ) | **United States Magistrate Judge** |
| and | ) | |
| | ) | |
| GREENE COUNTY PUBLIC SCHOOLS, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

This matter is before the court on Greene County Public Schools' ("GCPS")

Motion to Dismiss (Docket #13); Plaintiff's Motion to Amend Complaint (Docket #23);

The James C. Hormel School of The Virginia Institute of Autism's ("VIA") Motion for

More Definite Statement (Docket #37); and VIA's Motion to Dismiss (Docket #47). By

Orders dated December 29, 2008 and February 2, 2009, all pretrial motions in this case

were referred to the undersigned. These motions were briefed and argued on February 3,

2009. Following oral argument, the court gave Plaintiff until March 15, 2009 to file

additional responses to the Motions to Dismiss and directed GCPS and VIA to file any

reply briefs within ten (10) days thereafter. On March 20, 2009, Plaintiff filed a

Supplemental Memorandum in Opposition to GCPS' Motion to Dismiss, VIA's Motion

for More Definite Statement, and VIA's Motion to Dismiss, and in support of Plaintiff's

Motion to Amend.[1]  Both Defendants have responded, making the matter ripe for disposition.

Recently, VIA has filed a Motion to Strike photographs filed by Plaintiff (Docket #74), which were placed under seal by Order dated March 24, 2009.  Plaintiff also filed a Motion for Leave to File First Supplemental Complaint (Docket #77) and a Motion to Strike the Supplemental Affidavit of Randy Corpening (Docket #85).  These motions are addressed herein.

For the reasons outlined below, the undersigned **RECOMMENDS** that GCPS' Motion to Dismiss (Docket #13) be **DENIED**; Plaintiff's Motion to Amend (Docket #23) be **GRANTED**; VIA's Motion for More Definite Statement (Docket #37) be **DENIED**; VIA's Motion to Dismiss (Docket #47) be **GRANTED** in part and **DENIED** in part; VIA's Motion to Strike (Docket #74) be **GRANTED**; Plaintiff's Motion for Leave to File First Supplemental Complaint (Docket #77) be **DENIED**; and Plaintiff's Motion to Strike Supplemental Affidavit (Docket #85) be **DENIED**.  It is further **RECOMMENDED** that the parties be **DIRECTED** to file summary judgment briefs within ninety (90) days.

## I.

This action involves an alleged violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.  Congress enacted the IDEA, in part, to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent

---

[1]  As Plaintiff is proceeding pro se, the late filing will be considered.

living." 20 U.S.C. § 1400(d)(1)(A).  Accordingly, as a condition of federal financial

assistance under the Act, states must provide disabled children with a free appropriate

public education ("FAPE").  20 U.S.C. § 1412(a)(1)(A).

"The 'free and appropriate public education' required by the Act is tailored to the

unique needs of the handicapped child by means of an 'individualized educational

program' (IEP)."  Bd. of Educ. v. Rowley, 458 U.S. 176, 181-182 (1982). [2]  The IEP is

prepared at a meeting between a qualified representative of the local educational agency

("LEA"),[3] the child's teacher, the child's parents or guardian and, where appropriate, the

child.  20 U.S.C. § 1414(d)(1)(B); Honig v. Doe, 484 U.S. 305, 311 (1988).  The IEP

must contain "statements concerning a disabled child's level of functioning, set forth

measurable annual achievement goals, describe the services to be provided, and establish

objective criteria for evaluating the child's progress."  M.M. ex rel. D.M. v. Sch. Dist.,

303 F.3d 523, 527 (4th Cir. 2005) (citing 20 U.S.C. § 1414(d)(1)(A)).  It must be

reviewed once per year to ensure the child is receiving FAPE.  Honig, 484 U.S. at 311.

The IDEA establishes certain procedural safeguards to ensure the provision of

FAPE by a state educational agency ("SEA")[4] or LEA; one such safeguard is the

opportunity for an impartial due process hearing.  20 U.S.C. § 1415(f)(1)(A).  At the

---

[2]  Rowley addresses the Education of the Handicapped Act, which was subsequently
amended and renamed the IDEA in 1990.  Pub. L. No. 101-476, 104 Stat. 1103.

[3]  LEA is defined in 20 U.S.C. § 1401(19)(A) as "a public board of education or other
public authority legally constituted within a State for either administrative control or
direction of, or to perform a service function for, public elementary schools or secondary
schools in a city, county, township, school district, or other political subdivision of a
state. . . ."

[4]  SEA is defined in 20 U.S.C. § 1401(32) as a state board of education or other agency
primarily responsible for the state supervision of public elementary and secondary
schools.

conclusion of a due process hearing, an aggrieved party may file a civil action in federal court challenging the decision rendered. 20 U.S.C. § 1415(i)(2)(A). The Act provides that the court shall consider records of the administrative proceedings, as well as additional evidence at the request of a party, and must base its decision on the preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C).

In reviewing the findings of the due process hearing officer, courts must give due weight to the state administrative proceeding. Rowley, 458 U.S. at 206. At the same time, courts should be "mindful that the judiciary lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ., 397 F.3d 77, 82 (2d Cir. 2005) (internal citations omitted). As the Supreme Court noted in Rowley, "the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." 458 U.S. at 206.

The judicial review proceedings under the IDEA have been described as "something short of a trial de novo." Town of Burlington v. Dep't of Educ., 736 F.2d 773, 790 (1st Cir. 1984); see also Damian J. v. Sch. Dist., No. 06-3866, 2008 WL 191176 at *2 (E.D. Pa. Jan. 22, 2008) ("The 'due weight' requirement has been described as 'modified de novo' review, and is the appropriate standard of review of administrative hearing decisions in IDEA cases."). The ultimate question is whether a proposed IEP is adequate and appropriate for a particular child at a given point in time. Town of Burlington, 736 F.2d at 788. A court's inquiry into suits brought under the IDEA is twofold: (1) whether the state has complied with the procedures set forth in the Act; and

4

(2) whether the IEP developed through the Act's procedures is reasonably calculated to enable the child to receive educational benefits. Rowley, 458 U.S. at 206-07. If these requirements are met, the state has complied with the obligations imposed by the IDEA and the courts can require no more. Id. at 207.

## II. [5]

Johnnie Smith ("Johnnie") is the fictitious name for the autistic child whose education is at issue in this case. In the spring of 2006, Johnnie's parents moved to Greene County, Virginia, and enrolled Johnnie at VIA, a private day school for children with autism located in Charlottesville. The Greene County Community Policy and Management Team entered into a contract with VIA (the "Principal Agreement"), and took over payment for Johnnie's tuition. An August 28, 2007 IEP provided for Johnnie's continued placement at VIA and noted that, over the past year, Johnnie had made "amazing progress;" VIA appeared to be an environment in which Johnnie would continue to excel.

While at school on November 7 and 8, 2007, Johnnie experienced episodes of self-injurious behavior, which his parents attribute to a change in his schedule. Following the incident on November 8, 2007, Johnnie was excluded from attending class at VIA and was provided home school services. VIA officials subsequently determined that Johnnie could not be educated safely in the home and met with Greene County staff and Johnnie's parents regarding the need to find Johnnie an additional aide, to be funded by Greene County, so that he could finish his education at VIA.

---

[5] As both Defendants have filed Motions to Dismiss, the court construes the factual allegations of the Complaint in the light most favorable to Plaintiff. Schweikert v. Bank of America, N.A., 521 F.3d 285, 287 (4th Cir. 2008).

Case 3:08-cv-00030-NKM-mfu   Document 87   Filed 04/22/09   Page 5 of 30   Pageid#: 800

On December 3, 2007, VIA's Board of Directors met and voted to discharge Johnnie from VIA effective December 4, 2007. Johnnie's parents were not invited to attend this meeting. On December 13, 2007, Johnnie's parents filed an IDEA due process complaint with the Virginia Department of Education against Greene County and sought to join VIA into those proceedings. The due process hearing officer, John Hooe ("Officer Hooe"), ordered that VIA grant stay-put placement to Johnnie through conclusion of the due process proceedings, pursuant to 20 U.S.C. § 1415(j). Johnnie returned to VIA on January 8, 2008, and experienced another self-injurious episode one week later. On January 24, 2008, VIA stopped providing stay-put services on the advice of counsel. According to VIA, the school exercised a thirty-day written notice clause in its contract, notifying Greene County that it was terminating the Principal Agreement effective February 17, 2008.

VIA filed a legal challenge to Officer Hooe's stay-put ruling in the United States District Court for the Eastern District of Virginia, alleging it was not a party to the due process proceedings and was not bound by Officer Hooe's stay-put order. The court declined to intervene at an interlocutory stage of the due process proceedings and ultimately dismissed the case.[6] Officer Hooe subsequently recused himself from the due process proceedings, and a new hearing officer, Peter Vaden ("Officer Vaden"), was appointed. Officer Vaden overturned Officer Hooe's stay-put decision on February 15, 2008.

---

[6] See Virginia Institute of Autism v. Va. Dep't of Educ., 537 F. Supp. 2d 817 (E.D. Va. 2008).

Case 3:08-cv-00030-NKM-mfu   Document 87   Filed 04/22/09   Page 6 of 30   Pageid#: 801

Following Johnnie's discharge from VIA, Greene County and Johnnie's IEP team worked to find a suitable alternative placement. Johnnie commenced a residential placement at Cumberland Hospital for Children and Adolescents ("Cumberland") on March 24, 2008, pursuant to IEP addenda dated March 17, 2008 and April 2, 2008. On March 25, 2008, Officer Vaden issued a lengthy opinion dismissing VIA from the due process proceedings as an improper party and finding that Greene County had complied with the IDEA and provided Johnnie with FAPE.

Plaintiff[7] filed this action on June 23, 2008 challenging Officer Vaden's due process decision, alleging Johnnie has been denied FAPE and seeking compensatory education as a result. Plaintiff also alleges a breach of contract claim against VIA as third party beneficiary of the Principal Agreement.

### III.

Plaintiff seeks leave to amend his Complaint to add Greene County School Board doing business as Greene County Public Schools as Defendant in this case (Docket #23), in response to GCPS' assertion in its Motion to Dismiss that it is not a proper party defendant to this action, as it is not a legal entity subject to suit. GCPS maintains that the Greene County School Board is the entity legally constituted and charged with control and direction of the public schools and the provision of special education services. This argument is well supported both by the Virginia statutes and case law.

In Virginia, the school board is charged with supervision of the schools in each division, Virginia Code § 22.1-28, and it is a corporate entity vested with the power to

---

[7] Plaintiff is Johnnie Smith, by and through his parents and on their behalf. The IDEA gives procedural rights to children with disabilities and their parents. <u>See</u> 20 U.S.C. § 1415(a). References to Plaintiff encompass both Johnnie and his parents whenever appropriate.

sue and be sued. Va. Code Ann. § 22.1-71. Greene County Public Schools is not a recognized corporate entity with the authority to sue or be sued. See M.S. v. Fairfax Co. Sch. Bd., 1:05cv1476, 2006 WL 721372, at *3 (E.D. Va. Mar. 20, 2006) ("Fairfax County School Board is the only local entity empowered to govern the Fairfax County public school system and is the only entity that has the authority to sue and be sued in connection with such governance."). Absent an express grant of such authority, an action cannot lie against Greene County Public Schools. Id. at *3; see also Thayer v. Wash. Co. Sch. Bd., 949 F. Supp. 445, 446 n.1 (W.D. Va. 1996) (holding Washington County Public Schools could not be a proper defendant, as it is not a recognizable legal entity).

At the same time, however, the IEPs and addenda to IEPs at issue in this case do not refer to the Greene County School Board, but rather mention only Greene County Public Schools. As such, this case should proceed against the Greene County School Board doing business as Greene County Public Schools.[8] It is **RECOMMENDED** that Plaintiff's Motion to Amend Complaint (Docket #23) be **GRANTED,** and that Greene County School Board doing business as Greene County Public Schools be substituted as the appropriate party defendant in this case.

## IV.

Greene County moves to dismiss this action on numerous grounds (Docket #13).[9] The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint. Edwards

---

[8] Hereinafter, the undersigned refers to this Defendant simply as "Greene County."

[9] Since filing its Motion to Dismiss, Greene County has withdrawn two of its arguments. As VIA has been served in this action, Greene County no longer claims that Plaintiff's Complaint must be dismissed because VIA, a necessary party, has not been served. It has also withdrawn its claim that Plaintiff's Complaint is barred by the statute of limitations. The Complaint was filed, albeit under seal, on June 23, 2008, within the requisite 90 day period. 20 U.S.C. § 1415(i)(2)(B).

v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). The factual allegations contained in the complaint must be enough to raise a right to relief above the speculative level. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A Rule 12(b)(6) motion "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Edwards, 178 F.3d at 244; see also Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The court, however, is not required to accept as true legal conclusions set forth in plaintiff's complaint. Edwards, 178 F.3d at 244.

### A.

Greene County argues that this matter should be dismissed because Greene County Public Schools is not a proper party to this suit, as it is not a recognized legal entity under Virginia law and, therefore, is not a LEA under the IDEA. The undersigned agrees that Greene County Public Schools is not the legal entity charged with responsibility for the control of the county's schools, including the provision of special education services and compliance with the IDEA, 20 U.S.C. § 1400, et seq. However, the filing of Plaintiff's Amended Complaint naming the Greene County School Board renders the Motion to Dismiss moot on this score.

As outlined below, the remainder of Greene County's Motion to Dismiss lacks merit, even considering it to be filed on behalf of the Greene County School Board.

**B.**

Greene County[10] argues that Plaintiff's claims are moot because Johnnie's parents do not seek to have their son returned to VIA, and they executed IEP addenda for him to be evaluated at Cumberland on March 17 and April 2, 2008.[11] According to Defendants, this matter presents no actual case or controversy and therefore is moot. See U.S. Const. Art. III § 2 cl.1; see also Honig v. Doe, 484 U.S. 305, 317 (1988) (finding Article III limits federal jurisdiction to actual, ongoing controversies). Plaintiff contends that this matter is not moot, because he is seeking relief in the form of compensatory education for the denial of FAPE stemming from Johnnie's discharge from VIA on November 8, 2007.

"A party seeking to have a case dismissed as moot bears a heavy burden." Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ., 397 F.3d 77, 84 (2d Cir. 2005). Regardless of whether or not Johnnie's parents seek his return to VIA, the Amended Complaint alleges that Johnnie did not receive FAPE during the period from his suspension from VIA on November 8, 2007 until the state due process decision issued on March 25, 2008. The execution of IEP addenda to facilitate his evaluation at Cumberland does not eviscerate the claim that Johnnie was not provided FAPE during that nearly five month period. Plaintiff alleges that Greene County and VIA are responsible under the IDEA for providing compensatory education for the period of time after Johnnie was suspended by VIA, as educational services required under Johnnie's IEP were not rendered. At this stage of litigation, the undersigned finds that Plaintiff has alleged a

---

[10] VIA, in its Motion to Dismiss, joins in this argument.

[11] Johnnie's parents made clear at the February 3, 2009 hearing that they did not consent to a new IEP calling for Johnnie's residential placement at Cumberland. Rather, Johnnie's existing IEP was amended to include a period of evaluation at Cumberland, to which his parents consented.

colorable claim for compensatory education resulting from a denial of FAPE during the five months following Johnnie's discharge from VIA. Therefore, Plaintiff's claims are not moot.

The nature of the relief sought by Plaintiff in this case distinguishes it from cases such as Lillbask ex rel. Mauclaire v. Connecticut Department of Education, 397 F.3d 77 (2d Cir. 2005), in which the court held the issues involved were moot. In Lillbask, plaintiff challenged a 1997-98 IEP private placement proposal for a disabled student, Lindsey, arguing that Lindsey should remain in public schools. 397 F.3d at 83. Lindsey remained in the public school system pursuant to the IDEA's stay-put provision during the time four due process hearings were held and a subsequent federal action was filed. Id. at 83. Five years after litigation commenced, the court entered partial summary judgment for the defendants and lifted the stay-put order. Id. at 83. Nevertheless, Lindsey remained in the public school system and defendants acknowledged that it was an appropriate placement. Id. at 83. The court held that plaintiff's challenge to the 1997-98 IEP private placement proposal was rendered moot by the fact that Lindsey remained in public school and defendants acknowledged that the placement was appropriate. Id. at 88-89. The court further held that plaintiff could not salvage her case by arguing for the first time on appeal that Lindsey was entitled to compensatory education, as no mention of compensatory education was raised in her federal court complaint. Id. at 89-91.

Lillbask is factually distinguishable from the case at hand. In the instant case, Plaintiff does not challenge an IEP placement; rather, the Amended Complaint alleges that Johnnie was denied FAPE for a period of time after he was discharged from VIA. Regardless of Johnnie's current placement or IEP, if Plaintiff is able to prove his case, he

may be entitled to compensatory education under the IDEA. Unlike the plaintiff in Lillbask, Plaintiff in this case is not raising the issue of compensatory education for the first time on appeal. Rather, he sought such relief in his Amended Complaint.

Likewise, the facts of this case can be distinguished from Board of Education v. Steven L., 89 F.3d 464 (7th Cir. 1996), cert. denied, 520 U.S. 1198 (1997). In Steven L., plaintiff objected to a proposed change to the IEP of a disabled student, Andrew. 89 F.3d at 466. The original IEP remained in place throughout the due process and federal court proceedings. Id. at 466-67. The Seventh Circuit ultimately held that the case was moot, as it concerned Andrew's fifth grade educational needs. Id. at 467. At the time of the court's decision, he had graduated from eighth grade and his parents had agreed to a new IEP with a different school district, which would take effect when Andrew entered high school that fall. Id. at 467. The court found that there was no reasonable expectation, much less a demonstrated probability, that the same controversy would recur between Andrew and the school district; as the court noted, "[h]e will never again attend fifth grade." Id. at 468.

Both Lillbask and Steven L. involve challenges to IEPs rendered moot by the fact that the original IEPs remained in place throughout the proceedings and significant time had elapsed, such that there was no longer a reasonable expectation that the same controversy would arise between the parties. In the instant case, however, Plaintiff alleges Johnnie was denied FAPE over a period of time following his discharge from VIA, an allegation that, if proven, may entitle Plaintiff to recovery in the form of compensatory education. This is simply not a controversy rendered moot by the fact that Plaintiff no longer seeks placement at VIA. See Me. Sch. Admin. Dist. No. 35 v. Mr. &

Mrs. R., 321 F.3d 9, 17 (1st Cir. 2003) ("The presence of an actionable claim for compensatory education will insulate an IDEA case against a mootness challenge even after the child's eligibility for special education services ends."); Indep. Sch. Dist. No. 284 v. A.C., 258 F.3d 769, 774-75 (8th Cir. 2001) (dismissing argument that plaintiff's claim is moot because A.C. had moved to another school district, finding instead that plaintiff's claim concerned obligations the district had in the past and relief sought was compensatory in nature).

Greene County takes issue with Plaintiff's compensatory education claim, arguing that Plaintiff failed to present evidence of compensatory education at the due process hearing and cannot attempt to patch his case now at the federal level of review. Plaintiff counters that the IDEA permits courts to consider additional evidence and grant relief beyond what was requested at the due process hearing below.

The IDEA provides that in any civil action, the court "shall hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C)(ii). The Fourth Circuit has adopted the First Circuit's approach to the concept of "additional evidence," as outlined in Town of Burlington v. Department of Education, 736 F.2d 773 (1984), aff'd, 471 U.S. 359 (1985). See Springer v. Fairfax Co. Sch. Bd., 134 F.3d 659, 667 (4th Cir. 1998) ("We, along with other circuits, adopt the Burlington approach.").

In Burlington, the court construed the word "additional" in its ordinary sense to mean supplemental. 736 F.2d at 790. The court held:

> A trial court must make an independent ruling based on the preponderance of the evidence, but the [IDEA] contemplates that the source of the evidence generally will be the administrative hearing record, with some supplementation at trial. The reasons for supplementation will vary; they might include gaps in the administrative

transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing.

Id. at 790. The First Circuit declined to adopt a rigid rule disallowing all testimony from those who did, or could have, testified at the administrative hearing. Instead, the court left the determination of what is "additional" evidence to the trial court, "which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial de novo." Id. at 790-91; see also Springer, 134 F.3d at 667 ("A lax interpretation of 'additional evidence' would 'reduce the proceeding before a state agency to a mere dress rehearsal by allowing appellants to transform the Act's judicial review mechanism into an unrestricted trial de novo.'" (quoting Roland M. v. Concord Sch. Comm., 910 F.2d 983, 997 (1st Cir. 1990), cert. denied, 499 U.S. 912 (1991))). There is a rebuttable presumption that an administrative hearing witness is precluded from testifying at trial. Burlington, 736 F.2d at 791. In ruling on a party's motion to allow such testimony at trial:

> [A] court should weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources.

Id. at 791. As the Fourth Circuit recently held, "state administrative hearings under the IDEA are entitled to 'due weight.' But if parties could always introduce additional evidence in the district court 'to patch up holes in their administrative case,' administrative proceedings would no longer receive the weight that they are due."

<u>Schaffer ex rel. Schaffer v. Weast</u>, 554 F.3d 470, 476 (4th Cir. 2009) (quoting <u>Springer</u>, 134 F.3d at 667) (other internal citations omitted).

At this stage of the proceedings, the question of whether Plaintiff can present evidence of compensatory education when he failed to do so at the due process hearing is not properly before the court. Compensatory education only becomes relevant once Plaintiff establishes that Greene County failed to provide FAPE during the relevant time period. Plaintiff has alleged that Greene County denied Johnnie FAPE, and that he is entitled to compensatory education. The claims raised in the Amended Complaint are not moot and pass muster under Rule 12(b)(6), which is the issue currently before the court. The questions of whether Johnnie received FAPE and whether he is entitled to, and can present evidence of, a cognizable claim for compensatory education are questions reserved for summary judgment. <u>See Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.</u>, 397 F.3d 77, 83 n.3 (2d Cir. 2005) ("[A] motion for summary judgment in an IDEA case often triggers more than an inquiry into possible disputed issues of fact. Rather, the motion serves as a 'pragmatic procedural mechanism' for reviewing a state's compliance with the procedures set forth in IDEA and determining whether the challenged IEP is reasonably calculated to enable the child to receive educational benefits.").

The undersigned finds that Greene County's mootness argument lacks merit, and thus its Motion to Dismiss falls short on these grounds. However, it is **RECOMMENDED** that the parties be **DIRECTED** to file summary judgment briefs within ninety (90) days on the issue of whether Johnnie was denied FAPE between November 8, 2007 and March 25, 2008 and is entitled to compensatory education.[12]

---

[12] Plaintiff has filed a Motion to Strike the Supplemental Affidavit of Randy Corpening (Docket #85), arguing that it was improperly filed in support of Greene County's Motion

## C.

Finally, Greene County contends in its Motion to Dismiss that it cannot be liable for VIA's discharge of Johnnie, as it has no control over that private school. However, Greene County, as the LEA responsible for Johnnie's education, cannot avoid its obligations under the law by contracting with VIA. While VIA has certain obligations to Greene County under the terms of its contract, the Principal Agreement does not erase Greene County's statutory obligations to Johnnie and his parents. "It is settled that the contracts clause does not have the effect of overriding the power of the State to establish all the regulations that are reasonably necessary to secure the health, safety, and general welfare of the community; 'this power can neither be abdicated nor bargained away.'" Bishop v. Oakstone Acad., 477 F. Supp. 2d 876, 883 (S.D. Ohio 2007) (quoting Atl. Coast Line R. Co. v. City of Goldsboro, 232 U.S. 548, 558 (1914)). Notwithstanding a disabled child's placement at a private school, responsibility for ensuring the requirements of the IDEA are met remain with the public agency. See 20 U.S.C. § 1412(a)(11) (the SEA is responsible for the general supervision of educational programs for disabled children and for ensuring that the requirements of the IDEA are met); 34 C.F.R. § 300.325(c) ("Even if a private school or facility implements a child's IEP, responsibility for compliance with this part remains with the public agency and the SEA."); 8 Va. Admin. Code § 20-80-62(A) (the LEA must ensure that an IEP is "developed and implemented for each child with a disability served by that local educational agency, including a child placed in a private special education school by a

---

to Dismiss. Indeed, this affidavit has no bearing on Greene County's 12(b)(6) motion and has not been considered by the court at this stage of litigation. However, the undersigned recommends this matter proceed on summary judgment motions, at which time this affidavit may be considered. It is therefore **RECOMMENDED** that Plaintiff's Motion to Strike (Docket #85) be **DENIED** at this time.

local school division"); 8 Va. Admin. Code §§ 20-80-66(A)(1), (A)(6) (responsibility for ensuring compliance with the IDEA lies with the local school division, not the private school); 8 Va. Admin. Code § 20-80-90(A) ("The local educational agency shall ensure that the rights and protections under this chapter are given to children with disabilities for whom it is responsible, including children placed in private schools."). Greene County is responsible for ensuring Johnnie receives FAPE, regardless of whether he is placed in – and subsequently discharged from – a private school. It cannot contract around these obligations.

For these reasons, it is **RECOMMENDED** that Greene County's Motion to Dismiss (Docket #13) be **DENIED** and that the parties be **DIRECTED** to file summary judgment briefs within ninety (90) days.

<h1 style="text-align:center">V.</h1>

VIA has filed a Motion to Dismiss (Docket #47) this matter as well, arguing that, as a private school, it is not governed by the IDEA; that Plaintiff's IDEA claims are moot;[13] and that Plaintiff cannot state a claim for breach of contract, but even if he could, the court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

<h1 style="text-align:center">A.</h1>

The IDEA does not impose liability on private entities that contract with public agencies to provide special education. Rather, the IDEA states that the SEA is responsible for the general supervision of educational programs for disabled children, and for ensuring that the requirements of the IDEA are met. 20 U.S.C. § 1412(a)(11).

---

[13] As the mootness argument has been discussed in the context of Greene County's Motion to Dismiss, see discussion, supra, § IV.B., it will not be addressed again here.

Moreover, with respect to children placed in private schools by public agencies, the IDEA provides that the SEA shall determine whether the schools meet standards that apply to the SEA and LEA, and that children have all the rights they would have if served by such agencies. 20 U.S.C. § 1412(a)(10)(B)(ii); see Gadsby v. Grasmick, 109 F.3d 940, 943-44 (4th Cir. 1997) (finding the IDEA places the ultimate responsibility for the provision of FAPE on the SEA); see also Ullmo ex rel. Ullmo v. Gilmour Acad., 273 F.3d 671, 679 (6th Cir. 2001) ("Under the IDEA, the responsibility for ensuring that disabled students receive a free appropriate public education lies with the state educational agency (SEA)."); Bishop v. Oakstone Acad., 477 F. Supp. 2d 876, 883 (S.D. Ohio 2007) ("[I]n an IDEA action, a plaintiff's remedy is against the local school district who made the placement, not against the private school itself.").

The regulations implementing the IDEA make clear that the IDEA applies only to public agencies, not to private schools. 34 C.F.R. § 300.2(b)(2). These regulations specifically provide that a public agency is responsible for ensuring that the rights and protections of the IDEA are given to disabled children placed in private schools by that public agency. 34 C.F.R. § 300.2(c)(1); see also 34 C.F.R. §§ 300.146, 300.149. "Even if a private school or facility implements a child's IEP, responsibility for compliance with this part remains with the public agency and the SEA." 34 C.F.R. § 300.325(c).

Moreover, Virginia regulations make plain that when a disabled student is placed in a private school, the responsibility for ensuring compliance with the IDEA lies with the local school division, not the private school. 8 Va. Admin. Code §§ 20-80-66(A)(1), (A)(6). The LEA must ensure that an IEP is "developed and implemented for each child with a disability served by that local educational agency, including a child placed in a

private special education school by a local school division." 8 Va. Admin. Code § 20-80-62(A); see also 8 Va. Admin. Code § 20-80-90(A) ("The local educational agency shall ensure that the rights and protections under this chapter are given to children with disabilities for whom it is responsible, including children placed in private schools.").

A private school does not fit within the definition of a SEA, defined in the IDEA as a state board of education or other agency primarily responsible for the state supervision of public elementary schools and secondary schools. 20 U.S.C. § 1401(32). Nor can it be considered a LEA, defined as:

> [A] public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State, or for such combination of school districts or counties as are recognized in a State as an administrative agency for its public elementary schools or secondary schools.

20 U.S.C. § 1401(19)(A); see Ullmo, 273 F.3d at 679 ("[T]he IDEA's definition of a LEA leaves 'no room' for Gilmour to fit within the statutory term." (quoting St. Johnsbury Acad. v. D.H., 240 F.3d 163, 172 (2d Cir. 2001))).

The undersigned reads the IDEA, the implementing regulations, and the Virginia Administrative Code to assign liability under the IDEA to either the LEA or SEA, or both. See Gadsby, 109 F.3d at 955 (stating that "both the language and the structure of IDEA suggest that either or both" a LEA and SEA may be held liable for the failure to provide FAPE).

This reading of the statute is consistent with the case law from other jurisdictions. In J. v. School District of Philadelphia, No. 06-3866, 2007 WL 1221216, at *3 (E.D. Pa.

Apr. 25, 2007), the district court joined the Second and Sixth Circuits in finding that a private entity cannot be held liable under the IDEA, stating "[p]rivate schools are not local educational agencies, defined as public administrative bodies by the IDEA, and do not fit into the definition of any other entity that may be held liable under the Act." See St. Johnsbury Acad. v. D.H., 240 F.3d 163, 171 (2d Cir. 2001) ("IDEA's implementing rules reinforce the principle that IDEA applies only to the State and other public agencies, *not* to private schools in which public agencies may place children."); Ullmo, 273 F.3d at 679 (finding a private institution is not subject to liability under the IDEA); see also Koehler ex rel. Koehler v. Juniata Co. Sch. Dist., No. 1:07cv117, 2008 WL 1787632, at *5-7 (M.D. Pa. Apr. 17, 2008) (holding private entities are not subject to direct liability under the provisions of the IDEA). As such, Plaintiff fails to state a claim in terms of VIA's liability under the IDEA.[14]

## B.

However, as third party beneficiaries of the contract between VIA and Greene County, Plaintiff may assert a state law claim for breach of contract against VIA for suspending and terminating Johnnie in violation of VIA's contractual obligations. Cf. St. Johnsbury Acad., 240 F.3d at 172-73 ("We do not mean to imply that arrangements between a public agency and a private school are not enforceable against the private school."); Koehler, 2008 WL 1787632, at *7-9 (finding public agencies can contract with private entities to enforce the IDEA, thereby creating contractual liability on the part of the private entity for failure to comply with the Act's provisions).

---

[14] Finding that private institutions are not subject to liability under the IDEA does not leave Plaintiff without redress. Plaintiff may redress his grievances with VIA "by filing either contracts claims or claims under 42 U.S.C. § 1983." Bishop v. Oakstone Acad., 477 F. Supp. 2d 876, 884 (S.D. Ohio 2007).

Case 3:08-cv-00030-NKM-mfu    Document 87    Filed 04/22/09    Page 20 of 30    Pageid#: 815

VIA argues that the state law third party beneficiary claim must be dismissed as a matter of law because its contract with Greene County provided that it may be terminated by either party with thirty (30) days written notice. While that language does appear in the Principal Agreement, there are other provisions in the contract which suggest that further factual development is necessary before this argument may be fully addressed as a matter of law. First, the contract is termed a "Principal Agreement" and is executed by an entity other than the Greene County School Board. Indeed, the Principal Agreement is between VIA, as the Provider of services, and Greene County Community Policy and Management Team ("CPMT"), as the Buyer of services. On the present record, it is unknown what relationship, if any, exists between the Greene County School Board and the Greene County CPMT.

Next, the Principal Agreement does not appear to refer specifically to Johnnie or services to be rendered pursuant to his IEP. Rather, this Principal Agreement appears to be some sort of umbrella agreement between the Greene County CPMT and VIA under which services for multiple children may be rendered. In that regard, § 4.A. of the Principal Agreement provides as follows:

> **Requirement for PSO.** A Purchase of Services Order (PSO) shall be issued for any and all discrete services that are to be provided by the Provider to any child under the supervision or authority of the Buyer. No services shall be administered to a child under the supervision or authority of the Buyer without a PSO authorizing such discrete services signed by the CPMT Chairperson's designee and the Provider.

The Principal Agreement places specific obligations on a Provider before it may terminate a PSO regarding a specific child. Section 4.E. of the Principal Agreement provides as follows:

> **Termination of PSO by Provider.** The Provider may only terminate a PSO prior to its expiration in the event of the child subject of the PSO committing an infraction considered a Serious Incident as defined in Section fourteen (14) of this Contract and the Provider having followed the notice requirements stated therein. In the event of termination of a PSO, all reasonable efforts will be made to give the Buyer *ten (10)* days written notice prior to termination or suspension of services to the child. Such written notice shall include the specific reason(s) for terminating or suspending services to the child.

Plaintiff claims in this case that VIA's Board of Directors met secretly on December 3, 2007, allegedly without notice to Plaintiff, and voted to terminate all services to Johnnie, effective the next day, December 4, 2007. The notification letter from VIA does not state that it terminated the Principal Agreement between Greene County CPMT and VIA; rather, the letter states that "the Board of Directors has voted to discharge [Johnnie] from the Virginia Institute of Autism and to discontinue home-bound services effective Tuesday, December 4, 2007."

As such, construing the allegations and the limited factual record in the light most favorable to the Plaintiff, the action taken by VIA as reflected in the December 3, 2007 letter more nearly resembles a termination of the PSO for Johnnie as opposed to a termination of the Principal Agreement. On this record and at this stage of the case, therefore, it cannot be said that VIA's Motion to Dismiss the third party beneficiary claim is sound as a matter of law. This is an issue to be addressed on summary judgment.

Although the undersigned recommends dismissing Plaintiff's IDEA claims against VIA, it also recommends exercising its discretion in retaining jurisdiction over the remaining state law claims. See 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it

has original jurisdiction); <u>Shanaghan v. Cahill</u>, 58 F.3d 106, 110 (4th Cir. 1995) (finding courts enjoy a wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished). In exercising its discretion, the district court is to consider factors such as convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity and considerations of judicial economy. <u>Shanaghan</u>, 58 F.3d at 110. Plaintiff's breach of contract claim against VIA arises out of the same facts and circumstances as the IDEA claims against Greene County, over which the court has original jurisdiction. 28 U.S.C. § 1367(a). In the interest of convenience and judicial economy, the undersigned finds that the state law claim against VIA should remain before the court.

For these reasons, it is **RECOMMENDED** that VIA's Motion to Dismiss (Docket #47) be **GRANTED** as to any claim it is subject to liability under the IDEA, but **DENIED** as to Plaintiff's third party beneficiary claim. It is further **RECOMMENDED** that the parties be **DIRECTED** to file summary judgment briefs on Plaintiff's breach of contract claim within ninety (90) days.

## VI.

VIA has also filed a Motion for More Definite Statement (Docket #37), arguing that Plaintiff's Amended Complaint does not comply with Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires Plaintiff to file "a short and plain statement of the claim" showing that he is entitled to relief. Although admittedly somewhat difficult to parse, Plaintiff's <u>pro se</u> Amended Complaint is liberally construed to state two remaining claims: (1) Count One against Greene County for violating the IDEA for the period November 8, 2007 to March 25, 2008, and seeking compensatory education; and

(2) Count Two against VIA for breach of contract as third party beneficiary of the

Principal Agreement between VIA and Greene County. See Thompson v. Va. Dep't of

Game & Inland Fisheries, No. 1:05cv109, 2006 WL 148746, at *1-2 (W.D. Va. Jan. 19,

2006) (pro se complaint must be liberally construed).

As such, it is **RECOMMENDED** that VIA's Motion for More Definite Statement

(Docket #37) be **DENIED.**

## VII.

At the evidentiary hearing on February 3, 2009, Plaintiff argued that he seeks

compensatory education from Greene County for a continuous denial of FAPE following

Johnnie's discharge from VIA. Following the hearing, Plaintiff sought leave to file under

seal certain photographs of Johnnie and his room at Cumberland, taken November 27-28,

2008 (Docket #70), in order to illustrate the bases for Plaintiff's concerns about the

ongoing harm Johnnie allegedly suffers as a result of Defendants' conduct. The court

granted Plaintiff's Motion to Seal,[15] prompting VIA to file a Motion to Strike the

photographs (Docket #74). Most recently, in a Motion for Leave to File First

Supplemental Complaint (Docket #77), Plaintiff argues that Johnnie continues to be

denied FAPE by Greene County and alleges concerns about IEP development and

implementation issues at Johnnie's current placement, AdvoServ. Plaintiff also seeks

leave to add new claims under the Comprehensive Services Act, Virginia Code §§ 2.2-

5200, et seq.

---

[15] Although the court permitted these photographs to be filed under seal, the undersigned
has not viewed these pictures relating to Plaintiff's alleged concerns about Johnnie's
placement at Cumberland.

Though Plaintiff suggests that the court has authority to rule on whether Johnnie has received FAPE since his placement at Cumberland in March, 2008, it makes both factual and legal sense that the period at issue in this case be limited to the nearly five months between Johnnie's discharge from VIA on November 8, 2007 and the decision issued by the due process hearing officer on March 25, 2008. As to the beginning of the relevant period, Plaintiff makes no claim regarding Johnnie's education at VIA before his suspension on November 8, 2007. As to the terminal date of March 25, 2008, Johnnie was placed at Cumberland pursuant to an IEP addendum agreed to by his parents on March 17, 2008. Another IEP addendum concerning additional services during Johnnie's placement at Cumberland followed shortly thereafter on April 2, 2008. Although Plaintiff raised concerns at the February 3, 2009 hearing about Johnnie's placement at Cumberland and attendant regression, and now raises concern in his Motion for Leave to File Supplemental Complaint about Johnnie's placement at AdvoServ, this court may not reach any such claim as there has been no administrative review of his placement there or for anything that has transpired after March 25, 2008.

"The IDEA establishes a series of elaborate procedural safeguards 'designed to ensure that the parents or guardian of a child with a disability are both notified of decisions affecting their child and given an opportunity to object to these decisions.'" M.M. ex rel D.M. v. Sch. Dist., 303 F.3d 523, 527 (4th Cir. 2002) (quoting Gadsby v. Grasmick, 109 F.3d 940, 956 (4th Cir. 1997)). Parents asserting a violation under the IDEA must first request a due process hearing. Id. at 536. Exhaustion of administrative remedies is required under the Act.[16] See 20 U.S.C. § 1415(l); see also Scruggs v.

---

[16] There are three potential exceptions to this exhaustion requirement: 1) if the administrative process would have been futile; 2) if the school board failed to give

Campbell, 630 F.2d 237, 239 (4th Cir. 1980) ("[T]he Act contemplates exhaustion of administrative remedies."); Matrejek v. Brewster Cent. Sch. Dist., 471 F. Supp. 2d 415, 418 (S.D.N.Y. 2007) (holding plaintiffs who bring suit under the IDEA must first exhaust the administrative remedies available to them under the statute), aff'd, 293 Fed. Appx. 20 (2d Cir. 2008). Failure to exhaust deprives the court of subject matter jurisdiction over a claim. M.M., 303 F.3d at 536; see also Ekweani v. Bd. of Educ., No. CCB-07-3432, 2008 WL 5525606, at *2 (D. Md. Dec. 31, 2008) ("The Fourth Circuit has held that exhaustion of these administrative requirements is necessary, and that federal action is premature where plaintiffs have not exhausted state administrative [remedies].").

The Fourth Circuit has held that "[w]hen parents of a disabled child challenge multiple IEPs in court, they must have exhausted their administrative remedies for *each academic year* in which an IEP is challenged." M.M., 303 F.3d at 536. Additionally, in J.L. v. Ambridge Area School District, No. 06cv1652, 2008 WL 2798306, at *7-8 (W.D. Pa. July 18, 2008), the court declined to consider expert testimony regarding the amount of compensatory education needed to bring disabled student J.L. up to the level he would have achieved but for the denial of FAPE, because the testimony related to events that occurred after the due process hearing. The court held that "to the extent that Plaintiffs maintain that such evidence is admissible to establish a denial of FAPE during the 2006/2007 [school year], no due process complaint was filed by the Plaintiffs for this time period." Id. at *8. Therefore, the court held that plaintiffs did not fully exhaust their administrative remedies. Id. at *8.

---

parents proper notification of their administrative rights; or 3) if administrative exhaustion would have worked severe harm upon a disabled child. M.M., 303 F.3d at 536. None of these three exceptions applies to this case.

The IDEA gives an aggrieved party the right to bring a civil action with respect to a due process complaint filed pursuant to 20 U.S.C. § 1415(b)(6). See 20 U.S.C. § 1415(i)(2)(A). In the instant case, Plaintiff's due process complaint and the administrative review conducted by the Virginia Department of Education concerned the period following Johnnie's discharge from VIA and prior to his placement at Cumberland. As there is no administrative record for the court to review with respect to what has transpired since Johnnie's placement at Cumberland and AdvoServ, the court has no ability to hear these claims. Plaintiff must first exhaust his administrative remedies.

This case can be distinguished from DeVries v. Spillane, 853 F.2d 264 (4th Cir. 1988), in which the Fourth Circuit held that re-exhaustion of the issues was not necessary. In DeVries, plaintiff's mother, Marjorie DeBlaay, insisted DeVries attend the neighborhood public school, Annandale High School. 853 F.2d at 265. The school system declined to change DeVries' placement from the Leary School, a private special education program. Id. at 265. The administrative hearing officer found in favor of the school system, the state reviewing officer affirmed, and plaintiff filed suit in district court. Id. at 265. In the interim period, Leary School officials decided that DeVries had progressed such that he could be served adequately in the South County program of West Potomac High School. Id. at 265. DeBlaay rejected this placement offer but failed to initiate an administrative hearing. Id. at 265. At trial, DeBlaay advised the court that she no longer sought review of the appropriateness of the Leary program. Id. at 265. The district court dismissed the case, refusing to hear evidence of the new complaint concerning the South County program, because it had not been the subject of the

administrative hearing. Id. at 265. Plaintiff appealed. Id. at 266. The Fourth Circuit held that re-exhaustion was not required because DeBlaay's complaint, namely that DeVries attend school at Annandale, remained unaffected by the new IEP involving another school. Id. at 266-67.

In DeVries, the issue remained the same despite the fact that the IEP changed; DeBlaay sought placement for her son at Annandale High School. In the instant case however, the issues involving Johnnie's discharge from VIA are entirely separate from those concerning his placement at Cumberland and AdvoServ. The fact that Plaintiff couches his claims involving Cumberland and AdvoServ as continuing harm stemming from Johnnie's discharge from VIA in November, 2007 is of no moment. Whether Johnnie's discharge from VIA was wrongful and denied him FAPE is unrelated to the issue of whether Johnnie was denied FAPE while placed at Cumberland and AdvoServ. The subject of the due process hearing and Plaintiff's Amended Complaint is limited to what happened following Johnnie's discharge from VIA on November 8, 2007. Therefore, the court's review is limited to this time period. See M.M., 303 F.3d at 536.

Courts must be careful not to turn the character of a hearing from one of review to one of trial de novo. Town of Burlington v. Dep't of Educ., 736 F.2d 773, 790 (1st Cir. 1984). The undersigned declines to consider whether Johnnie received FAPE at Cumberland and AdvoServ without the benefit of reviewing the underlying administrative proceedings, as the court lacks the knowledge and expertise necessary to resolve such questions of educational policy. See Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ., 397 F.3d 77, 82 (2d Cir. 2005). "As Supreme Court precedent makes clear, the IDEA does not grant federal courts a license to substitute their own notions of

sound educational policy for those of local school authorities, or to disregard the findings developed in state administrative proceedings." Hartmann v. Loudoun Co. Bd. of Educ., 118 F.3d 996, 999 (4th Cir. 1997), cert. denied, 522 U.S. 1046 (1998); accord Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982) (courts should not "substitute their own notions of sound educational policy for those of the school authorities which they review"); M.M., 303 F.3d at 533 ("As we have repeatedly recognized, 'the task of education belongs to the educators who have been charged by society with that critical task . . . [and] federal courts must accord due weight to state administrative proceedings.'" (quoting Springer v. Fairfax Co. Sch. Bd., 134 F.3d 659, 663 (4th Cir. 1998))). The court therefore limits its review to the period for which Plaintiff's administrative remedies have been exhausted, the nearly five months between Johnnie's discharge from VIA on November 8, 2007 and the decision rendered by the due process hearing officer on March 25, 2008.

As the photographs and Motion for Leave to File First Supplemental Complaint filed by Plaintiff concern time periods for which there has been no administrative exhaustion, it is **RECOMMENDED** that VIA's Motion to Strike (Docket #47) be **GRANTED** and Plaintiff's Motion for Leave to File First Supplemental Complaint (Docket #77) be **DENIED**.

## VIII.

Accordingly, the undersigned **RECOMMENDS** that GCPS' Motion to Dismiss (Docket #13) be **DENIED**; Plaintiff's Motion to Amend (Docket #23) be **GRANTED**; VIA's Motion for More Definite Statement (Docket #37) be **DENIED**; VIA's Motion to Dismiss (Docket #47) be **GRANTED** in part and **DENIED** in part; VIA's Motion to

Case 3:08-cv-00030-NKM-mfu   Document 87   Filed 04/22/09   Page 29 of 30   Pageid#: 824

Strike (Docket #74) be **GRANTED**; Plaintiff's Motion for Leave to File First Supplemental Complaint (Docket #77) be **DENIED**; and Plaintiff's Motion to Strike Supplemental Affidavit (Docket #85) be **DENIED**. It is further **RECOMMENDED** that the parties be **DIRECTED** to file summary judgment briefs within ninety (90) days.

The Clerk of the Court is directed immediately to transmit the record in this case to the Honorable Norman K. Moon, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is hereby directed to send a certified copy of this Report and Recommendation to Plaintiff and counsel of record.

Enter this 22nd day of April, 2009.

Michael F. Urbanski
United States Magistrate Judge