# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JOHNNIE SMITH, | CIVIL ACTION NO. 3:08-CV-00030 |
| *Plaintiffs,* | |
| v. | MEMORANDUM OPINION |
| THE JAMES C. HORMEL SCHOOL OF THE VIRGINIA INSTITUTE OF AUTISM, | |
| | JUDGE NORMAN K. MOON |
| AND | |
| GREENE COUNTY PUBLIC SCHOOL BOARD, | |
| *Defendants.* | |

Plaintiffs[1] filed this suit pursuant to the Individuals with Disabilities in Education Act (the "IDEA"), 20 U.S.C. § 1400, *et seq*., challenging the finding by a due process hearing officer that the Greene County Public School Board ("Greene County")[2] had provided a free and appropriate public education to plaintiff Johnnie Smith, an autistic child, after Johnnie was discharged from the James C. Hormel School of the Virginia Institute of Autism ("VIA"), the private school in which Johnnie had been placed pursuant to his individualized education program ("IEP") with Greene County for 2007-08. Johnnie was discharged from VIA when his

---

[1] "Johnnie Smith" is a pseudonym for Plaintiff, who is represented by and through his parents, who are proceeding pseudonymously as "John and Mary Smith." All of the court's transcripts in this matter have been redacted accordingly.

[2] I use the term "Greene County" to refer to the Greene County Public School Board. The parties also use "Greene County" to refer to the Greene County Community Policy and Management Team, or "Greene County CPMT," which contracts on behalf of a number of agencies in Greene County, using a form agreement to purchase services from private entities. Where it matters, I draw the distinction between the Greene County Public School Board and the Greene County CPMT.

behavior grew so dangerously violent and life-threatening that VIA grew concerned about its ability to ensure Johnnie's safety and the safety of VIA's other students and its staff.[3] VIA determined that Johnnie's "need for support, accommodations and modification exceed the capacity of VIA's program resources and facilities, both for school-based and home-bound services." Plaintiffs also assert a breach of contract claim against VIA as third-party beneficiaries to VIA's contract with Greene County, through which Greene County purchased educational services for Johnnie. VIA has filed counterclaims against plaintiffs, alleging defamation and fraud.

The matter is now before me upon consideration of the report and recommendation (the "report") of United States Magistrate Judge Michael F. Urbanski (docket no. 194), recommending the following: that the motion for summary judgment (docket no. 124) filed by Greene County be granted; that plaintiffs' motion for partial summary judgment for denial of a free and appropriate public education to plaintiff Johnnie Smith (docket no. 160) be denied; that the motion for summary judgment (docket no. 126) filed by the James C. Hormel School of the Virginia Institute of Autism ("VIA") be granted; that plaintiffs' motion for partial summary

---

[3] For example, on September 13, 2007, Johnnie injured a VIA staff member when he pushed her across a room into the edge of an open door. On November 7, 2007, Johnnie chased after staff and head-butted a staff member in the jaw; the next day, Johnnie injured his head and face by repeatedly banging his head against a wall, his desk, and other objects. Johnnie was born in 1995, but at the time of these incidents he was apparently 5'8" tall, and weighed approximately 185 pounds. Plaintiffs attributed this escalation in the violence of his behavior to a temporal change in his schedule. Following the incident on November 8, 2007, VIA directed plaintiffs to keep Johnnie at home while they repaired his classroom. On November 12, 2007, VIA began providing in-home services to Johnnie, including two instructors who worked with Johnnie from approximately 9:00 a.m. to 2:00 p.m. These instructors observed that Johnnie's behavior at home included incidents in which Johnnie threw himself over an upstairs balcony and charged a second-floor window. After a due process hearing officer entered a stay-put order on January 4, 2008, Johnnie returned to VIA on January 8, 2008. Johnnie engaged in further self-injurious behavior on January 15, 2008. VIA thereby terminated its agreement with Greene County to provide services for Johnnie, effective February 17, 2008. An incident reported on January 24, 2008, involved Johnnie forcing his way into other classrooms, leading to an evacuation of other students. Plaintiffs chose not to return Johnnie to VIA after that incident. On January 28, 2008, on the advice of counsel, VIA ceased providing stay-put services.

judgment on contract claims (docket no. 161) be denied; that VIA's motion for leave to file deposition transcript under seal (docket no. 184) be denied; and that plaintiffs' motion to dismiss (docket no. 96) VIA's counterclaims (docket no. 89) be denied as to count I (defamation) and granted as to count II (fraud). Judge Urbanski further recommends that the court exercise its supplemental jurisdiction and retain the defamation counterclaim. The parties have filed objections to Judge Urbanski's report.

For the reasons stated herein, I will overrule all of the objections but one, and the report and recommendation will be adopted, except for the recommendation that plaintiffs' motion to dismiss (docket no. 96) be granted as to VIA's fraud counterclaim. Additionally, two motions have been filed since the report and recommendation was submitted: VIA filed a motion for leave to amend its complaint (docket no. 198), and plaintiffs have filed a "motion for leave to file demonstrative exhibit" (docket no. 202). As explained herein, VIA's motion for leave to amend (docket no. 198) will be granted, and plaintiffs' "motion for leave to file demonstrative exhibit" (docket no. 202) will be denied.

## I.

### A.

Federal Rule of Civil Procedure 72 permits a party to submit objections to a magistrate judge's ruling to the district court within fourteen days of the order. Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b). A district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The court may adopt without de novo review any portion of the magistrate judge's recommendation to which Petitioner does not raise a specific objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005). "The filing of objections

to a magistrate's report enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). General objections to a magistrate judge's report and recommendation, reiterating arguments already presented, lack the specificity required by Rule 72 and have the same effect as a failure to object. *See Veney v. Astrue*, 539 F. Supp. 2d 841, 845 (W.D. Va. 2008) (citations omitted). The district court may accept, reject, or modify the recommended disposition based on its de novo review of the recommendation and the objections made. Fed. R. Civ. P. 72(b)(3). Those portions of the magistrate judge's report and recommendation to which no objection are made will be upheld unless they are clearly erroneous or contrary to law. *See Orpiano v. Johnson*, 687 F.2d 44, 47 (citing *Webb v. Califano*, 468 F. Supp. 825, 830 (E.D. Cal.1979)).

**B.**

The facts in this case were thoroughly set forth by the magistrate judge, and I will only briefly reiterate them here.

Johnnie Smith is a child with autism spectrum disorder. His family formerly lived in Tazewell County, Virginia, but moved in 2006 to Greene County, Virginia, so Johnnie could be placed at VIA, a private day school for children with autism, in nearby Charlottesville. In April 2006, Johnnie was enrolled at VIA.[4] Students are placed at VIA under IEPs developed by the child's home public school system. Johnnie initially attended VIA under his Tazewell County IEP. Pursuant to a contract between Greene County Community Policy and Management Team ("Greene County CPMT"), which contracts on behalf of a number of agencies in Greene County,

---

[4] Johnnie's parents first sought to enroll him at VIA in 2001, but he was not accepted until 2006.

using a form agreement to purchase services from private entities, Greene County took over payment of Johnnie's tuition.

The IEP of August 28, 2007, providing for Johnnie's placement at VIA for the 2007-08 school year, noted that Johnnie exhibited behavior such as head-butting, throwing or breaking objects, hitting his head with his hand or against an object, and running away from instructors. In the fall of 2007, Johnnie's behavior grew more serious. Johnnie (who by this time was 5' 8" tall and weighed 185 pounds) injured several staff members and himself, and caused damage to his classroom at VIA. Following an incident on November 8, 2007, VIA directed plaintiffs to keep Johnnie at home while his classroom was repaired. On November 12, 2007, VIA began providing in-home services to Johnnie. Johnnie's behavior during this period of in-home instruction included incidents in which Johnnie threw himself over an upstairs balcony and charged a second-floor window. Johnnie returned to VIA for a half-day on November 29, 2007. On December 3, 2007, VIA's board of directors voted to discharge Johnnie from VIA and to terminate homebound services on December 4, 2007, on the grounds that Johnnie's behavior had escalated to a level that was life-threatening, and VIA was concerned about the safety of its staff and students. VIA offered to provide up to twenty hours of training for respite care workers to support Johnnie in-home, and stated that nine months to a year later it would reconsider Johnnie's application for readmission to VIA.

Beginning on December 4, 2007, Greene County began searching for alternative placements for Johnnie. Greene County also offered to provide in-home services for Johnnie, but his parents declined the offer, although one "persistent" autism specialist did visit the home four or five times to work with Johnnie. On December 21, 2007, plaintiffs filed a due process complaint. A due process hearing officer entered a stay-put order on January 4, 2008, pursuant

to which Johnnie returned to VIA on January 8, 2008. Johnnie engaged in further self-injurious behavior on January 15, 2008, banging his head into a wall. On January 18, 2008, VIA issued a thirty-day written notice, as provided in its contract with Greene County, that it was terminating its agreement with Greene County to provide services for Johnnie, effective February 17, 2008. An incident reported on January 24, 2008, involved Johnnie forcing his way into other classrooms, leading to an evacuation of other students. Plaintiffs chose not to return Johnnie to VIA after that incident. On January 28, 2008, on the advice of counsel, VIA ceased providing stay-put services.

On February 8, 2008, Greene County found a placement for Johnnie at the Cumberland Hospital for Children and Adolescents ("Cumberland"), where he was admitted with a bed reserved. However, his parents refused to consent to placement at Cumberland until they had reviewed other facilities, and by the end of February, Johnnie's reserved bed at Cumberland was no longer available. Plaintiffs did not consent to Johnnie's placement at Cumberland until March 17, 2008, after the conclusion of the due process hearing presently under review. A bed once again became available at Cumberland, and Johnnie began his placement there on March 24, 2008. Johnnie was placed at Cumberland pursuant to IEP addenda dated March 17, 2008, and April 2, 2008.

The court's inquiry in the instant case is limited to the time from November 8, 2007, the date of Johnnie's suspension from VIA, to March 25, 2008, the date the due process hearing officer issued his opinion. The instant action involves no claims regarding the appropriateness

of Johnnie's IEP of August 28, 2007, or his education at VIA prior to November 8, 2007, and any issues arising after March 25, 2008, are not before me in the instant action.[5]

I will discuss the facts further only as necessary to address the parties' objections.

## II.

The first objection (docket no. 196), lodged by defendant VIA, concerns a non-dispositive ruling by Judge Urbanski. A district court reviews the decision of a magistrate judge regarding a non-dispositive matter for whether the ruling was "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a).

VIA objects to the magistrate judge's order (docket no. 192) of December 7, 2009, granting in part and denying in part plaintiffs' "Rule 1 Request for Acceptance of Late Filing" (docket no. 166). In his order of December 7, 2009, Judge Urbanski stated, in pertinent part:

> By Order dated June 10, 2009, the court set a schedule pursuant to which the parties were to file motions for summary judgment by August 19, 2009 and responses by September 8, 2009. Defendants [Greene County and VIA] timely filed their motions for summary judgment and supporting memoranda via the Court's CM/ECF system on August 10, 2009. Plaintiff apparently emailed summary judgment motions to defense counsel and the undersigned's chambers on August 10, 2009, but never filed them with the Clerk's office. Nevertheless, Greene County and VIA timely responded to said motions on September 8, 2009.
>
> * * *
>
> On September 5, 2009, Plaintiff e-mailed to opposing counsel and the Clerk's office a motion for extension of the summary judgment briefing schedule and a motion to be granted access to the CM/ECF system. By oral order on September 9, 2009, the undersigned directed the Clerk to file these motions. Plaintiff's motion for an extension was granted on September 10, 2009, and the parties were directed to file any further briefs supporting their respective positions

---

[5] I stress that the issue in this case is whether Greene County denied Johnnie FAPE, not whether Johnnie was denied FAPE by VIA, which was settled when the magistrate judge issued a report and recommendation that plaintiffs' IDEA claim against VIA be dismissed, and I adopted that report without objection from plaintiffs. *See* docket no. 88, May 14, 2009.

on summary judgment by Friday, September 18, 2009. By Order dated September 11, 2009, the court granted Plaintiff access to the CM/ECF system.[6]

As of the morning of the summary judgment hearing on September 22, 2009, Plaintiff had filed no responses to either summary judgment motion. Instead, at the hearing, Plaintiff produced a sheaf of papers that he insisted had been e-mailed to the court and opposing counsel near midnight on September 18, 2009. Neither the court nor defense counsel received any such email from Plaintiff. At the court's direction, the Clerk accepted the documents tendered by Plaintiff and then docketed them as Docket #157, subject to a ruling as to whether they should be deemed filed. By oral order, the court directed Plaintiff within five (5) days to file a motion for leave to file his responses.

* * *

On September 28, 2009, Plaintiff filed by CM/ECF the subject motion entitled Rule 1 Request for Acceptance of Late Filings (Docket #166). Plaintiff's motion refers to having e-mailed a brief in opposition to VIA's motion for summary judgment on September 18, 2009. However, no such responsive brief was tendered at the hearing on September 22, 2009 or otherwise filed in this case. Therefore, to the extent that Plaintiff's motion for leave concerns an as-yet unsubmitted brief opposing VIA's summary judgment motion, it is **DENIED**. *In any event, Plaintiff's own summary judgment motion concerning the contract claim against VIA has been filed and docketed. As such, the court considers VIA's summary judgment motion to be contested by Plaintiff and has referred to the already voluminous record when considering this motion.*

(Emphasis added.)

VIA contends that, although Judge Urbanski recommended that its motion for summary judgment be granted in its entirety on the merits, I "should nevertheless hold that VIA's motion was *not* 'contested [*sic*] – *i.e.*, was 'unopposed' – and rule in VIA's favor on the alternative

---

[6] Judge Urbanski noted that, "[a]lthough CM/ECF access had been ordered, Mr. and Mrs. Smith asserted at the September 22, 2009 hearing that they could not use the system at that time because they had not yet been able to attend a training session."

ground that Plaintiffs failed to contest VIA's motion or its statement of undisputed facts."[7]  In

support of its argument VIA presents the following:

> "Dispositive motions, especially summary judgment motions, by themselves
> require considerable time, effort, and money to prepare.  Therefore **the failure to
> file a response <u>may</u> be grounds in and of itself to dismiss an action**."  *Mitchell v.
> Hous. Auth. of Winston-Salem*, 2006 U.S. Dist. LEXIS 19441, *8 (M.D.N.C. Mar.
> 29, 2006).   The law discourages plaintiffs from bringing claims they have no
> interest in pursuing.  *Id*. ("When a party files a lawsuit, she has a duty to act **with
> the utmost diligence <u>evidencing a serious intention to litigate the matter</u>**.").

(Underscored emphasis added.)  I underscore that a grant of summary judgment on the ground

that a party failed to oppose is an entirely discretionary matter, *i.e.*, "the failure to file a response

*may* be grounds in and of itself to dismiss an action."  *Mitchell v. Winston-Salem*, Civil Action

No. 1:04-cv-1103, 2006 WL 889552 at *3 (M.D. N.C. Mar. 29, 2006) (emphasis added).  As the

unpublished case VIA cites noted,

> Pursuant to Fed.R.Civ.P. 56(e), the rule governing summary judgment motions,
> the failure to respond to such a motion does not alone allow for the dismissal of
> the action.  Rather, Rule 56 requires the Court to review and decide it.  *Custer v.
> Pan American Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993).  This is because
> **Rule 56 is written from the viewpoint of establishing the burdens imposed on
> the moving party**. *Id*. Other rules, such as Fed. R. Civ. P. 16(f), 37(b)(2)(C), and
> importantly for this case, 41(b), incorporate the concept of default and require a
> **minimum level of litigation conduct** and behavior from the parties. *Id*. at 415.
> Thus, if a court finds it appropriate to dismiss an action because the plaintiff
> failed to respond to a summary judgment motion, the Court must utilize Rule
> 41(b).  It may not dismiss on the grounds that the motion was unopposed unless
> that finding is tied to a failure to prosecute or to obey court orders.

*Id*. at n. 1 (emphases added).

---

[7] VIA raised this objection as the sole objection in an eight-page filing on December 28, 2009.  (Docket no. 196.)
VIA rehearsed the objection again in its objections (docket no. 197) of December 28, 2009, to the magistrate
judge's report and recommendation, and yet again in its response (docket no. 204) to plaintiffs' objections (docket
no. 199).

Upon my review of the docket – not to mention the actual record – I find that it cannot be seriously contended that plaintiffs have failed to "evidenc[e] a serious intention to litigate the matter." *Id.* at *3. Judge Urbanski did not err in "referr[ing] to the already voluminous record"[8] and deciding that, because plaintiffs had already filed their own summary judgment regarding the claims raised in VIA's summary judgment motion, the court would "consider[] VIA's summary judgment motion to be contested by Plaintiff. . . ." To be sure, plaintiffs failed to timely file a specific opposition to VIA's summary judgment motion, despite being given several opportunities to do so. However, these pro se plaintiffs have certainly not failed to prosecute this action, and VIA is not entitled to a default as to its summary judgment motion. The objection (docket no. 196) will be overruled. Inasmuch as plaintiffs submitted their "motion for leave to file demonstrative exhibit" (docket no. 202) in support of their opposition to this objection, the "demonstrative exhibit" is immaterial, and the motion (docket no. 202) will be denied.[9]

### III.

VIA objects (docket no. 197) to the magistrate judge's recommendation that I grant plaintiffs' motion to dismiss as to count I of VIA's counterclaims, alleging fraud. The magistrate judge observed that

---

[8] As of the date of this memorandum opinion, the docket in this case bears over 200 entries. The parties have appeared numerous times before the magistrate judges of this court, and have even appeared at a mediation conference.

[9] Plaintiffs contend they are not filing their brief "for the substantive comments contained therein, but to demonstrate the Plaintiffs were 'ready' to and thought they had emailed a copy of the document to the Clerk, [the magistrate judge's] Chambers, and Counsel of Record on September 18." Given that plaintiffs were provided at least three opportunities by the court to submit an opposition brief and failed to do so, there is no legally compelling basis for the court to consider the document. Until now (some four months after response briefs were due) plaintiffs have not acted to correct their alleged "error" in failing to oppose VIA's summary judgment motion.

[t]he elements of actual fraud in Virginia are: (1) a false representation; (2) of a material fact; (3) made intentionally and knowingly; (4) with intent to mislead; (5) reliance by the party misled; and (6) resulting damage to the party misled. *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994). The burden is on the party charging fraud to prove it by clear and convincing evidence. *Id.*; *Wolford v. Williams*, 195 Va. 489, 498, 78 S.E.2d 660, 665 (1953).

The actual fraud alleged in this case consists of misrepresentations made by the Smiths. Specifically, the Smiths represented that they "would observe the techniques taught at VIA and would participate in VIA's home programming," (Docket #89, Counterclaim ¶ 10); that they "would be moving to the Charlottesville area and that they would 'build their lives' around Johnnie Smith's placement at VIA," (Docket #89, Counterclaim ¶ 11); and that "John Smith expressly stated to the Admissions Committee that he would transfer his legal practice to the Washington, D.C. office of his law firm and work as much as possible from home in the Charlottesville area." (Docket #89, Counterclaim ¶ 19.) In essence, the actual fraud alleged in this case is that "both parents would actively participate in the in-home activities and reinforcement that are an integral part of the VIA curriculum and educational approach;" and that "John Smith would relocate to the Washington D.C. area and actively participate in the in-home activities and reinforcement that are an integral part of the VIA curriculum and educational approach." (Docket #89, Counterclaim ¶¶ 79-80.)

The key to understanding the fraud count in VIA's counterclaim is the word "would," which appears in each of the fraud allegations. In essence, VIA alleges that the Smiths promised to perform two future acts if Johnnie was admitted to school at VIA: (1) the Smiths would actively participate in the home aspect of Johnnie's education; and (2) Mr. Smith would move his law practice to his Washington, D.C. office and try to work from the Charlottesville area as much as possible. There is no dispute that Mrs. Smith moved the family home from Tazewell to Greene County to facilitate Johnnie's enrollment at VIA. VIA's fraud claim is based on the fact that the Smiths allegedly did not participate in the home aspect of his education, and Mr. Smith did not move his law practice from Phoenix to Washington, D.C., as promised.

To be actionable, however, "fraud must relate to a present or a pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events." *Soble v. Herman*, 175 Va. 489, 500, 9 S.E.2d 459, 464 (1940). As the court noted in *Lloyd v. Smith*, 150 Va. 132, 145, 142 S.E. 363, 365 (1928):

> Were the general rule otherwise, every breach of contract could be made the basis of an action in tort for fraud. To permit an action for damages in favor

-11-

> of one who has no other ground for complaint, except an unfulfilled promise . . . , that is upon a broken contract, would ignore essential elementary distinctions, and in effect nullify the statute of frauds.

Plainly, both of the representations upon which VIA bases its fraud claim are promises as to future events: (1) to actively participate in home activities; and (2) to move the law practice from Phoenix to Washington, D.C. On their face, therefore, such statements are not present or pre-existing facts and are not actionable as fraud.

VIA argues, however, that fraud exists where it is alleged that the promises were made with the intention not to keep them. The Virginia Supreme Court held in *Colonial Ford Truck Sales v. Schneider*, 228 Va. 671, 677, 325 S.E.2d 91, 94 (1985), that:

> While failure to perform an antecedent promise may constitute breach of contract, the breach does not amount to fraud. But the promisor's intention—his state of mind—is a matter of fact. When he makes the promise, intending not to perform, his promise is a misrepresentation of *present* fact, and if made to induce the promisee to act to his detriment, is actionable as an actual fraud.

Likewise, in *Lloyd*, the court noted the exception to the general rule that a claim for fraud may not lie for promises as to future events:

> There are, however, some real and apparent exceptions. The courts are not agreed as to all of these exceptions, but there is much authority to the effect that an action in tort for deceit and fraud may sometimes be predicated on promises which are made with a present intention not to perform them. . . . It has been stated that the gist of fraud in such case is not the breach of the agreement to perform, but the fraudulent intent.

150 Va. at 145, 142 S.E. at 365; *see also Sea-Land Service, Inc. v. O'Neal*, 224 Va. 343, 351, 297 S.E.2d 647, 651-52 (1982).

While VIA generally alleges that the Smiths falsely represented that they would participate in the home activities and that Mr. Smith would come to Washington, nowhere in the lengthy counterclaim is it specifically alleged that at

the time the Smiths made those promises, they intended not to perform them. Such an allegation is critical to transform a garden-variety breach of contract case into an action for fraud and is absent here. Unlike in *Colonial Ford Truck Sales*, there is no allegation in this case that the alleged representations were "false and fraudulent and known to be so when made." 228 Va. at 676, 325 S.E.2d at 94. Given the strictures of Rule 9(b),[10] and the requirements of Virginia law, Count II of VIA's counterclaim fails to state a claim for actual fraud, as it concerns misrepresentations as to the future, and the counterclaim does not specifically allege that the Smiths intended not to fulfill those promises when those promises were made. As such, it is **RECOMMENDED** that the Smiths' Motion to Dismiss (Docket #96) as to Count II, alleging fraud, be **GRANTED**.

Upon consideration of VIA's objection, however, it appears that VIA's counterclaims included specific allegations that plaintiffs intentionally misled VIA at the time plaintiffs made those promises to VIA, and that plaintiffs knew at the time they gave the promises that they intended not to perform them. For example, VIA's fraud counterclaim included the following allegation: "Counter-Defendants knowingly and intentionally misled VIA during the admissions process about their willingness to collaborate with VIA on ABA-based [Applied Behavior Analysis-based] therapy, to implement consistent approaches in the home, and about Counter-Defendant John Smith's relocation to Virginia." The fraud counterclaim further asserts that, "[a]s a result of Counter-Defendants' false representations during the admissions process and subsequent failure to participate actively in Johnnie's educational program and reinforce at home the ABA-based behavioral strategies VIA employs in the school setting, VIA was damaged." (Docket no. 89, Counterclaim ¶ 51.) Under the heading, "**Count II: Fraud**," VIA restated and incorporated by reference all the preceding paragraphs of its counterclaims, and specifically alleged:

---

[10] The magistrate judge observed that Federal Rule of Civil Procedure 9(b) states that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

Counter-Defendants falsely represented to VIA during Johnnie Smith's application to VIA that both parents would actively participate in the in-home activities and reinforcement that are an integral part of the VIA curriculum and educational approach.

\* \* \*

Counter-Defendants falsely represented to VIA during Johnnie Smith's application to VIA that Counter-Defendant John Smith would relocate to the Washington D.C. area and actively participate in the in-home activities and reinforcement that are an integral part of the VIA curriculum and educational approach.

\* \* \*

Counter-Defendants' false representations were material to VIA's decision to admit Johnnie Smith to VIA.

\* \* \*

Counter-Defendants' false representations were made intentionally and knowingly.

\* \* \*

Counter-Defendants' false representations *were made with an intent to mislead*.

\* \* \*

VIA relied on Counter-Defendants' misrepresentations in its decision to admit Johnnie Smith to VIA. Absent Counter-Defendants' repeated false assurances, VIA would not have admitted Johnnie to VIA.

(Emphases added.)

VIA sufficiently alleged that, at the time plaintiffs made those promises, they intended not to perform them. The allegations are sufficiently specific to survive a motion to dismiss; furthermore, as discussed in the next section, VIA has filed a motion to amend its counter-complaint to provide, *inter alia*, greater specificity to its fraud allegations. Accordingly, VIA's

objection (docket no. 197) will be sustained insofar as it regards VIA's counterclaim of fraud, and plaintiffs' motion to dismiss (docket no. 96) will be denied.

## IV.

VIA has filed a motion (docket no. 198) for leave to amend its counter-complaint, pursuant to Fed. R. Civ. P. 15(a), to include (i) further specificity to its allegations of fraud and (ii) a request for punitive damages. The amendments are reflected in VIA's first amended complaint, which it has attached as an exhibit to its motion for leave to amend.

A party may move, at any time, to amend its complaint by leave of court, "and leave shall be freely given where justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Ward Elec. Serv., Inc. v. First Com. Bank*, 819 F.2d 496, 497 (4th Cir. 1987) (mandating a "liberal reading of the rule's direction for 'free' allowance"). In deciding whether to grant a party leave to amend, a court "should focus 'on prejudice or futility or bad faith as the only legitimate concerns in denying leave to amend, since only these truly relate to protection of the judicial system or other litigants.'" *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279 (4th Cir. 1987) (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)).

Regarding the fraud claim, VIA promptly offered its amended complaint to remedy pleadings deficiencies identified not by counter-defendants, but by the magistrate judge. Although I have found that the original allegations of fraud were sufficient, the amendments provide a degree of specificity that cannot be disputed, and therefore are not futile. Counter-defendants cannot claim prejudice by my granting leave to amend, given that they have been on notice of the fraud counterclaim since May 29, 2009, when VIA filed its counterclaims; furthermore, discovery on the counterclaims has been stayed, so counter-defendants will not be subjected to duplicative or additional discovery.

Regarding VIA's motion to amend to include a request for punitive damages, both defamation and fraud provide a basis upon which VIA may seek punitive damages under Virginia law. *See Gov't Micro Res., Inc. v. Jackson*, 271 Va. 29, 42 (2006) (reciting standard for recovering punitive damages in a defamation action); *Adkins v. Crown Auto, Inc.*, 488 F.3d 225, 234 (4th Cir. 2007) (reciting standard for recovering punitive damages in fraud action). The proposed amendment is not futile, and is adequate to support a claim for punitive damages. *See, e.g., Schieszler v. Ferrum College*, 233 F. Supp. 2d 796, 804-06 (W.D. Va. 2002). VIA has previously alleged that counter-defendants committed fraud and defamation willfully and wantonly, and with actual malice to harm VIA. *See, e.g., Adkins*, 488 F.3d at 234 (punitive damages for common law fraud are available upon a showing of "actual malice"); *Williams v. Garraghty*, 249 Va. 224, 236-37 (1999) (punitive damages may be awarded in defamation cases where the defendant acted with actual or express malice). As with its fraud claims, VIA has not unduly delayed in proposing this amendment; although VIA's counterclaims were originally filed in May 2009, discovery on VIA's counterclaims has thus far been stayed (and therefore counter-defendants will not be subjected to duplicative discovery as a result of the amendment), and VIA has been unable to proceed with the prosecution of the counterclaims. Counter-defendants are not prejudiced by the proposed amendment; indeed, were VIA to present evidence supporting punitive damages at trial, VIA could move to amend its complaint, pursuant to Fed. R. Civ. P. 15(b), to conform with the evidence. And, counter-defendants are not subject to any new, uncontemplated claims as a result of the proposed amendment, given that VIA's request for punitive damages is based on the same underlying factual allegations as VIA's original counterclaims.

Accordingly, VIA's motion (docket no. 198) for leave to amend will be granted, and the Clerk of the Court will be directed to file the first amended complaint (attached as an exhibit to the motion for leave to amend).

## V.

Plaintiffs have filed a document (docket no. 199) that they have styled as objections. These objections simply rehearse arguments previously made and, with only a few exceptions, plaintiffs have failed to cite to the extensive administrative record. Plaintiffs' "objections" are replete with allegations of facts not in the record, and are not supported by the law or the administrative record.[11] In considering an objection to a magistrate judge's report and recommendation, a court may review *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). To qualify for *de novo* review, however, the objections contemplated in § 636(b)(1)(C) must be "specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). The United States Court of Appeals for the Fourth Circuit has directed that "[s]ection 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized." *United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007); *see also Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) (holding that *de novo* review is not warranted "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations").

---

[11] The magistrate judge's report cites to the administrative record throughout. Plaintiffs state their disagreement with the magistrate judge's factual determinations, but point to nothing in the record to support their disagreement. Regarding legal determinations, plaintiffs state, for example, that "[t]he law is clear." *See* docket no. 199 at 10. However, they have neglected to provide any citations to this clearly established law.

General, nonspecific objections to a magistrate judge's report and recommendation, reiterating arguments previously presented, have the same effect as a failure to object. *Veney v. Astrue*, 539 F. Supp. 2d 841, 845 (W.D. Va. 2008). Accordingly, "[a]ny part of the magistrate judge's disposition that has not been properly objected to is reviewed for, at most, clear error." *Id*. at 844; *see also Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) ("[I]n the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" (quoting Fed. R. Civ. P. 72 advisory committee note))..

Here, plaintiffs set forth only general, nonspecific disputes with the magistrate judge's analysis. Accordingly, I need only review the report for clear error. Having reviewed the report for clear error, I find none. Regarding Greene County, the crux of plaintiffs' IDEA claim is that Johnnie was denied a free appropriate public education (or "FAPE") following his suspension from VIA on November 8, 2007, and the court's inquiry in the instant case is limited to the time from November 8, 2007, the date of Johnnie's suspension from VIA, to March 25, 2008, the date the due process hearing officer issued his opinion.[12] Upon review of the record, I agree with the magistrate judge that the preponderance of the evidence supports a finding that Greene County committed no procedural or substantive violations of the IDEA, and Greene County provided Johnnie with FAPE at all times during the period relevant to this action. Regarding VIA, I agree with the magistrate judge's findings that there is no genuine issue of material fact as to the

---

[12] The issue presently before me is whether Greene County denied Johnnie FAPE, not whether Johnnie was denied FAPE by VIA. That issue was settled when the magistrate judge issued a report and recommendation that plaintiffs' IDEA claim against VIA be dismissed, and I adopted that report without objection from plaintiffs. *See* docket no. 88, May 14, 2009. I add also that plaintiffs make no claim regarding the appropriateness of Johnnie's IEP of August 28, 2007, or his education at VIA prior to November 8, 2007; furthermore, any claims after March 25, 2008, are not before me in the instant action.

conclusion that plaintiffs have no actionable claim for breach of contract against VIA. VIA did not breach its 2007 Principal Agreement with Greene County to plaintiffs' detriment, and plaintiffs have no recoverable damages from the alleged breach. I also agree with the magistrate judge that, regarding plaintiffs' motion to dismiss VIA's counterclaims, VIA has sufficiently stated a counterclaim of defamation; and, as I have previously set forth, I find that VIA has sufficiently stated a counterclaim of fraud.

Nonetheless, out of an abundance of caution, I have liberally construed plaintiffs' objections, regarding which I make the following observations.

## A. Greene County

### 1.

Regarding Greene County, plaintiffs state that a local education agency ("LEA") "may not wait until prolonged noncompliance is evident . . . and then claim that the IEP was too rigorous or otherwise too challenging. . . ." My review of the record indicates that Greene County has never made that claim. The appropriateness of the IEP of August 28, 2007, was not challenged by plaintiffs in the due process hearing from which the instant action arose (the sole issue there concerned IEP implementation during a discrete period of time), and plaintiffs cannot raise that new issue for the first time here. The magistrate judge correctly determined that the alleged failure to implement the IEP does not state a valid claim against Greene County: Greene County could not implement the IEP because, through no fault of Greene County, Johnny Smith was removed from VIA. As plaintiffs acknowledge, it was "VIA's board of directors," not Greene County, who "determined that the school could no longer handle Johnnie's disability related behavior." *See* docket no. 199 at 3. Plaintiffs also acknowledge that, even though a staff of four adults at VIA were assigned to support Johnnie, his behavior problems increased and

became very difficult to handle, eventually becoming dangerous for other students and VIA staff.

**2.**

Plaintiffs now argue that the Faison School in Richmond, Virginia, could have been an appropriate placement for Johnnie when VIA became unavailable. *See* docket no. 199 at 11 n. 8. Plaintiffs state that,

> [w]hile Parents [the plaintiffs] recognize that VIA is the closest day placement to their home, they believe there is a material factual dispute as to whether it was the 'only' such placement. The Faison School for Autism on the west side of Richmond was also available and within reasonable commuting distance. Greene did not propose Faison solely because it unilaterally concluded that Faison required too long of a commute for Johnnie. The IEP Team, which included Parents, did not make this decision.

The record indicates that, at the administrative hearing, plaintiffs did not refute the claim that there were other appropriate placements for Johnnie. In fact, the claim is raised for the first time in plaintiffs' objections to the report. Accordingly, there is no factual basis for this claim.

**3.**

Plaintiffs contend that "[t]he Court should award compensatory education as an equitable remedy for Defendants' failure" to provide "Johnnie an IEP-compliant education from November 8, 2007-March 25, 2008." Contrary to plaintiffs' arguments, there is no basis here for a claim of compensatory education services, an equitable remedy. *See G. v. Fort Bragg Dependent Schools*, 343 F.3d 295 (4th Cir. 2003). In the first instance, services were not denied to Johnnie. Alternative educational services were either provided to or offered to Johnnie from November 8, 2007, to March 25, 2008, either by VIA or by Greene County. Plaintiffs state that no services were available until March 25, 2008; however, the magistrate judge correctly detailed extensive services that were offered and rejected, or offered and eventually accepted, by

Johnnie's parents. *See* docket no. 194, at 23-28. Additionally, the record shows that the placement at Cumberland, which Johnnie's parents initially rejected but ultimately accepted, was available as of February 8, 2008.[13] Plaintiffs do not cite any errors regarding these factual findings, and their conclusory statement that "the LEA repeatedly and consistently failed to insure that Johnnie was being provided an IEP-compliant education, denying substantive benefits to Johnnie" (docket no. 199 at 3) is not supported by any citation. However, the magistrate judge's report does correctly cite to the record to support its finding, and that of the Hearing Officer, that services were provided during this period of time.

## 4.

Plaintiffs state that "[n]either VIA nor Greene (1) sought to change Johnnie's IEP placement from VIA to another school or (2) secure an administrative or judicial order that Johnnie's placement was so inappropriate that he should not be educated in his current IEP placement." (Docket no. 199 at 4.) In other words, defendants failed to be strictly "compliant with [the] student's IEP," and this failure, plaintiffs allege, leads to the conclusion that "Defendants failed to meet their IDEA obligations."

The record indicates that Johnnie was initially removed from in-school services at VIA in early November 2008, after a serious behavioral incident required his removal to permit VIA to repair the classroom. The record – as cited by the magistrate judge's report – also supports a

---

[13] As of February 8, 2008, when an IEP meeting was held, Cumberland had admitted Johnnie and a bed was immediately available. However, plaintiffs refused to consent to this placement until they had reviewed the Kennedy Krieger Institute in Baltimore, Maryland. By the end of February 2008, Johnnie's reserved bed at Cumberland was lost. The Smiths did not consent to Johnnie's placement at Cumberland until March 17, 2008. Johnnie began his placement at Cumberland on March 24, 2008, when a new bed became available, pursuant to IEP addenda dated March 17, 2008, and April 2, 2008. Plaintiffs do not cite any evidence suggesting that they accepted the services that were offered during this time or that they were willing to accept the earlier placement at Cumberland. Plaintiffs' cooperation – or lack thereof – is a proper equitable consideration.

finding that Greene provided additional support for Johnnie at home, so he could return to VIA, and Greene believed that Johnnie would be returning to VIA soon thereafter. Extensive services were provided by VIA in Johnnie's home from November 12, 2007, through December 3, 2007. On December 3, 2007, through no action of Greene County, Johnnie was officially barred from VIA by VIA's board of directors. Greene immediately began looking for an alternative placement for Johnnie and offered in-home services. There was no other program similar to VIA that was available, and Greene began researching residential placements.

On December 21, 2007, plaintiffs filed a request for a due process hearing, requesting relief against VIA. Plaintiffs' request for a due process hearing required the imposition of stay-put as a matter of law. Plaintiffs took action with the due process hearing officer to force upon Greene County the continuation of stay-put and implementation of the VIA IEP. Yet now plaintiffs suggest that Greene County should have initiated "administrative or judicial" action to force a different placement. This ignores the fact that plaintiffs initiated a due process hearing to require implementation of the IEP involving Johnnie's placement at VIA, and Greene County was thus required as a matter of statute to continue to implement the IEP and placement at VIA. Plaintiffs insisted on this action even though they knew that Greene County could not implement an IEP dependent upon Johnnie's placement at VIA, given that VIA refused to allow Johnnie to attend, and Greene County was not required to affirmatively seek out alternative placements for Johnnie. *See Wagner v. Board of Educ. of Montgomery County*, 335 F.3d 297, 301-02 (4th Cir. 2003) (stay-put provision of the IDEA does not impose an affirmative obligation on the part of the school board to propose alternative placements to an autistic child's then-current educational placement, notwithstanding the fact that the then-current placement was functionally

-22-

unavailable). Plaintiffs' circular assertions cannot form a specific objection upon which I could reject the magistrate judge's report.

**5.**

Plaintiffs argue additional facts not in evidence. Plaintiffs assert that Greene County did not pay for services in December 2007 and from February 2008 to March 2008. (Docket no. 199 at 4, 6.) No citation is made to the record to support this allegation, and it was not raised previously. Moreover, the contention is without merit, given that the record shows that Johnnie was provided services and that additional services were offered, but were rejected by his parents. Although plaintiffs complain of the equities of the situation, it was their own actions that deprived Johnnie of educational services during the period presently under review.

Plaintiffs cite to a <u>subsequent</u> due process hearing decision, not presently under review. (Docket no. 199 at 8, 10 n. 7, 11.) Plaintiffs acknowledge that this information is "subsequent evidence." It is not a part of the record presently before the court.[14] Any references to a subsequent due process hearing decision not presently before the court cannot provide a basis for a specific objection to the magistrate judge's report, and must be ignored.

Plaintiffs complain about a settlement agreement allegedly entered into by Greene County and VIA, whereby the parties supposedly agreed that Greene County would not bind VIA to contractual obligations to provide educational services to Johnnie. (Docket no. 199 at 4 n.3, 11 n.9, 12.) Plaintiffs have not entered that settlement agreement into evidence, and any

---

[14] Plaintiffs' IDEA claim is that Johnnie was denied FAPE following his suspension from VIA on November 8, 2007, and the court's inquiry in the instant case is limited to the time from November 8, 2007, the date of Johnnie's suspension from VIA, to March 25, 2008, the date the due process hearing officer issued his opinion. Plaintiffs make no claim regarding the appropriateness of Johnnie's IEP of August 28, 2007, or his education at VIA prior to November 8, 2007, and any claims after March 25, 2008, are not before me in the instant action.

allegations regarding that settlement agreement cannot form a specific objection to the magistrate judge's report.[15]

## B. VIA

### 1.

Plaintiffs repeat their argument that VIA agreed, in its 2007 Principal Agreement with Greene County, to comply with the IDEA. The crux of their contention is that Section One ("Adherence to Law") of the 2007 Principal Agreement bound VIA to comply with the IDEA. The magistrate judge reviewed in detail the terms of the 2007 Principal Agreement and the applicable Virginia contract law, and reported to the contrary, stating that "the Principal Agreement makes no mention of the IDEA whatsoever. . . . Language conferring IDEA liability on VIA is simply absent from the terms of the contract." (Docket no. 194 at 43.) To the extent plaintiffs have argued that the IDEA obligations are implicit in the 2007 Principal Agreement, Virginia law enforces only obligations that are set forth in the plain terms of the contract. *PMA Capital Ins. Co. v. US Airways, Inc.*, 271 Va. 352, 358 (2006) ("When the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning.") (citation omitted); *see also Berry v. Klinger*, 225 Va. 201, 796 (1983) ("[W]here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself. . . ." (quoting *Globe Co. v. Bank of Boston*, 205 Va. 841, 848 (1965))).

---

[15] In any event, it is an indisputable fact that VIA became functionally unavailable to Greene County as a placement for Johnnie, because VIA refused to accept him back into its program, and Greene County was not required to affirmatively seek out alternative placements for Johnnie when VIA became functionally unavailable. *See Wagner v. Board of Educ. of Montgomery County*, 335 F.3d 297, 301-02 (4th Cir. 2003) (stay-put provision of the IDEA does not impose an affirmative obligation on the part of the school board to propose alternative placements to an autistic child's then-current educational placement, notwithstanding the fact that the then-current placement was functionally unavailable).

In light of these undisputed facts and statements of law, the magistrate judge found that "the Principal Agreement makes no mention of the IDEA whatsoever," and that "[t]here is no ambiguity with respect to whether VIA contracted to comply with the IDEA and implementing regulations." (Docket no. 194 at 43.) The magistrate judge recognized that "[c]ourts have recognized that agencies may contract to require a private school to comply with the IDEA." (*Id*., citation omitted.) However, the magistrate judge further recognized that "[c]ourts cannot create a new contract for the parties," or read a nonexistent term "into the parties' written agreement." (*Id*. at 43-44, citations omitted.) Accordingly, the magistrate judge rejected plaintiffs' petition to find an implied IDEA obligation in the contract. (*Id*. at 44-45 ("IDEA compliance cannot be implied." (citation omitted).)

Plaintiffs' objections present no new law or facts that would justify rejection of the magistrate judge's report. Plaintiffs fail to rebut the law relied on by the magistrate judge in finding that, under Virginia law, courts "must construe contracts as written without adding terms that were not contemplated by the parties." (*Id*. at 43, citation omitted.) Plaintiffs argue that the magistrate judge's interpretation would "fail[] to give meaning to a critical portion of the contract," *i.e.*, Section One of the 2007 Principal Agreement. (Docket no. 199 at 21.) But the magistrate judge's recommendation is not that Section One be rendered meaningless; rather, his finding is that, under Virginia law, Section One cannot be given the meaning plaintiffs propose, because it evinces no intent of the contracting parties (Greene County and VIA) to bind VIA to comply with the IDEA. Accordingly, I reject plaintiffs' objection to this finding.

**2.**

Plaintiffs broadly object that "the [report and recommendation] urges, wrongly Plaintiffs believe, that all Plaintiffs' claims again[st] both Defendants fail because they cannot prove

denial of FAPE." (Docket no. 199 at 23.) Apparently, plaintiffs take issue with the magistrate judge's alternative finding that plaintiffs' contract claim against VIA fails if the court finds that Greene County provided FAPE. The magistrate judge ruled that, even if VIA had somehow contracted to comply with the IDEA, VIA would still prevail because "there has been no denial of FAPE, and thus no IDEA violation, in this case." (Docket no. 194 at 46.) The magistrate judge's finding that VIA cannot be liable for an IDEA violation is correct, and plaintiffs' broad objection that they "believe" otherwise does not establish that the magistrate judge's finding was erroneous.[16]

### 3.

Plaintiffs assert that the

> question of whether timely notice [of the termination of the 2007 Principal Agreement] was given is clearly a question in dispute based on the discussion of it in the [report and recommendation]. It is clear that VIA did not give "written notice of the termination of both the Principal Agreement and [purchase of services order, or "PSO"] on January 18, 2008."

(Docket no. 199 at 22 (quoting docket no. 194 at 50).) The magistrate judge disagreed, finding that VIA properly terminated the 2007 Principal Agreement and that "no violation of the notice requirement occurred." (Docket no. 194 at 50.) Plaintiffs cite no case law or facts in the record that would demonstrate that the magistrate judge's conclusion was erroneous. By letter of January 18, 2008, VIA's counsel notified Greene County that VIA was terminating the 2007 Principal Agreement and any associated PSO. Plaintiffs offer no argument that this letter did not operate to terminate the Principal Agreement and PSO, other than their bald, counter-factual

---

[16] I add that the question whether VIA could be directly responsible under the IDEA for a denial of FAPE to Johnnie was settled when the magistrate judge issued a report and recommendation that plaintiffs' IDEA claim against VIA be dismissed because private institutions are not subject to liability under the IDEA, but that plaintiffs could seek redress under state contract law. *See* docket no. 87, April 22, 2009. I adopted that report and recommendation without objection from plaintiffs. *See* docket no. 88, May 14, 2009.

assertion that "[i]t is clear that VIA did not give 'written notice of the termination of both the Principal Agreement and PSO on January 18, 2008.'" (Docket no. 199 at 22 (quoting docket no. 194 at 50).) Furthermore, Greene County – the only other party to the 2007 Principal Agreement with VIA – has acknowledged that the 2007 Principal Agreement and any associated PSO were terminated properly. Accordingly, I will adopt the magistrate judge's finding that VIA did not breach the termination provision of the 2007 Principal Agreement.

## 4.

Plaintiffs' contract claim against VIA seeks neither monetary damages nor reinstatement at VIA. Rather, plaintiffs seek five months of compensatory education for Johnnie's alleged regression, post-dismissal from VIA.[17] The magistrate judge found that, in the context of breach of contract against VIA, "Plaintiff's damages claim makes no sense," given that "[t]he remedy Plaintiff seeks against VIA can only be recovered from Greene County," because "'the cost of providing . . . compensatory education . . . is borne solely by the school district.'" (Docket no. 194 at 51-52 (quoting *Hogan v. Fairfax County Sch. Bd.*, 645 F. Supp. 2d 554, 572 (E.D. Va. 2009) (private schools are not liable for the cost of providing compensatory education)).)

Thus the magistrate judge concluded that plaintiffs' damages were "speculative" and that the contract claim failed as a matter of law. (*Id*. at 52.) Plaintiffs contend that the speculative nature of their damages claim is "*precisely why courts have recognized equitable relief in the IDEA context.*" (Docket no. 199 at 22.) However, private schools are not liable for the cost of

---

[17] In support of their argument that Johnnie regressed after his dismissal from VIA, plaintiffs cite examples of Johnnie's behavior *prior* to his dismissal from VIA. As a matter of logic, plaintiffs cannot establish Johnnie Smith's alleged regression after dismissal by citing examples of his behavior prior to dismissal. Plaintiffs assert that VIA had documented regression "through Johnnie's jumping over a balcony onto a landing." (Docket no. 199 at 6 n. 6.) This is part of the conduct led VIA to dismiss Johnnie Smith. (Docket no. 194 at 11.)

providing compensatory education, *see Hogan*, 645 F. Supp. 2d at 572, and, as the magistrate judge reported, the record reflects that "[t]he only relief [plaintiffs] request[] is an award of compensatory education," (docket no. 194 at 51).

"As a general rule, damages for breach of contracts are limited to the pecuniary loss sustained." *Kamlar Corp. v. Haley*, 224 Va. 699, 705 (1983) (citation omitted); *see also Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 155 (2009). To prevail on a breach of contract claim, plaintiffs must adequately prove damages cause by the alleged breach of obligation. *Sunrise Continuing Care*, 277 Va. at 155. "Proof of damages is an essential element of a breach of contract claim, and failure to prove that element warrants dismissal of the claim." *Id*. at 156. "Damages that are contingent, speculative, and uncertain are not recoverable because they cannot be established with reasonable certainty." *Id*. at 154 (citation omitted).

The records shows that plaintiffs are "unable to provide an exact value for the future costs associated with compensatory education." (Docket no. 194 at 52.) Plaintiffs filed this action nearly two years ago, and still cannot articulate either the value of damages they seek or whether they intend to recover these unspecified damages from Greene County or VIA. Under Virginia contract law, plaintiffs must allege and prove damages that are not "contingent, speculative, and uncertain." *Sunrise Continuing Care*, 277 Va. at 154. Despite the lapse of two years in which to do so, plaintiffs have failed to show the value (or even the estimated value) of the compensatory education they seek. Summary judgment briefs in this case were filed months ago, and discovery on plaintiffs' claims is closed.[18] Plaintiffs' damages claim is unsupported,

---

[18] In their objections, plaintiffs suggest that VIA was tardy in complying with its discovery obligations. (*See* docket no. 199 at 13 n. 11.) I note that plaintiffs have not challenged VIA's discovery production by filing a motion to compel. I add that, although plaintiffs are proceeding pro se, Johnnie Smith's father is a senior litigation partner at an international law firm with over 500 attorneys, and has more than 25 years of federal civil litigation
(continued...)

speculative, and uncertain, and their contract claim against VIA fails on that basis alone. Moreover, even if plaintiffs had quantified the amount of IDEA compensatory education they seek, they nonetheless cannot recover the costs of IDEA compensatory education from VIA, a private school. *See Hogan*, 645 F. Supp. at 572.

**5.**

After a lengthy discussion of the "close question of law as to whether Johnnie is a third party beneficiary of the Principal Agreement and corresponding PSOs," the magistrate judge "recommended," based upon other arguments, "that the [contract] claim against VIA be dismissed as it is clear that there was no actionable breach of contract in this case." Plaintiffs state that they "believe that the question is not so close, but instead compelling [*sic*] falls in Johnnie's favor. Based on my review of the relevant facts and law regarding plaintiffs' third-party beneficiary theory, I find that, in addition to the magistrate judge's finding "that there was no actionable breach of contract in this case," Johnnie Smith was not a third-party beneficiary to the 2007 Principal Agreement.

Before discussing the reasons why plaintiffs have no actionable breach of contract claim in this case (because the Principal Agreement does not confer IDEA liability on VIA, VIA did not breach the termination provision of the contract, and plaintiffs failed to establish a colorable claim for damages), the magistrate judge provided the following discussion of Johnnie's alleged status as a third-party beneficiary to the 2007 Principal Agreement between Greene County CPMT (not Greene County Public Schools) and VIA:

---

[18](...continued)
experience.

Plaintiff claims VIA breached its 2007 Principal Agreement with Greene County CPMT ["Community Policy and Management Team"], a contract to which Plaintiff is not a party. "[U]nder certain circumstances, a party may sue to enforce the terms of a contract even though he is not a party to the contract." *Levine v. Selective Ins. Co. of Am.*, 250 Va. 282, 285, 462 S.E.2d 81, 83 (1995); *see also* Va. Code Ann. § 55-22.[19] To have standing to sue on a breach of contract theory, Plaintiff must prove that the parties to the Principal Agreement "clearly and definitely intended" to confer a benefit upon him. *Copenhaver v. Rogers*, 238 Va. 361, 367, 384 S.E.2d 593, 596 (1989); *see also Food Lion, Inc. v. S.L. Nusbaum Ins. Agency, Inc.*, 202 F.3d 223, 229 (4th Cir. 2000) (applying Virginia law).

"The essence of a third-party beneficiary's claim is that others have agreed between themselves to bestow a benefit upon the third party but one of the parties to the agreement fails to uphold his portion of the bargain." *Copenhaver*, 238 Va. at 367, 384 S.E.2d at 596. The third-party beneficiary need not be named in the contract; however, he must demonstrate that he was a direct beneficiary to the contract. *Bank of Am. v. Musselman*, 240 F. Supp. 2d 547, 554 (E.D. Va. 2003). Plaintiff cannot sue on a contract from which he benefits merely incidentally. *Id*. at 554; *Copenhaver*, 238 Va. at 367, 384 S.E.2d at 596. "[A]n incidental beneficiary is so far removed from the obligations assumed by the contracting parties that a court will not allow him to sue on that contract whereas an intended beneficiary is such an integral part of the obligations assumed by the contracting parties that a court will permit him to sue on that contract." *Radosevic v. Va. Intermont Coll.*, 651 F. Supp. 1037, 1038 (W.D. Va. 1987). The four corners of the agreement reveal whether the contracting parties clearly and definitely intended to directly benefit a third party. *Id*. at 1039.

In the instant case, the four corners of the Principal Agreement do not establish a clear and definite intent to confer a benefit upon any individual student, including Johnnie Smith. It is undisputed that neither Johnnie nor his parents were parties to the contract. Johnnie's name is not mentioned in the Principal Agreement. *See, e.g., Radosevic*, 651 F. Supp. at 1039 (finding the terms of the contract did not manifest clear and definite intent by parties to directly benefit plaintiff, and noting "[t]he contract does not mention Radosevic"). The Principal Agreement is a generic form agreement available to any agency of the Commonwealth contracting with a private entity to provide services to disabled or at-risk youth. (Docket #127 17.) The contract language does not reveal any intent to benefit Johnnie specifically. Rather, the contract

---

[19] The magistrate judge noted that the court has exercised its supplemental jurisdiction over plaintiffs' state law breach of contract claim pursuant to 28 U.S.C. § 1367(a) and accordingly must apply the substantive law of Virginia. Johnson v. Hugo's Skateway, 974 F.2d 1408, 1416 n.7 (4th Cir. 1992); Brown v. Mitchell, 327 F. Supp. 2d 615, 628 n.27 (E.D. Va. 2004).

states that it was intended to contain all the terms and expectations that must be "met by any provider of services to any and all children under the care and responsibility of Greene County [CPMT]." (Docket #127, Ex. H (emphasis added).) *But see Ogunde v. Prison Health Servs., Inc.*, 274 Va. 55, 63, 645 S.E.2d 520, 525 (2007) (finding plaintiff was intended beneficiary of contract between prison and medical services provider to provide health care for up to 6,000 inmates, including plaintiff).

The fact that Johnnie was the only Greene County student placed at VIA at the time the 2007 Principal Agreement was executed does lend weight to Plaintiff's argument that the parties intended to benefit him by entering into this contract. Indeed, in the IDEA context, courts have found that individual students can be third party beneficiaries to contracts with private schools providing for educational services. *See, e.g., Bishop v. Oakstone Acad.*, 477 F. Supp. 2d 876, 887 (S.D. Ohio 2007) (finding plaintiff is third party beneficiary to contract for provision of plaintiff's education because he was the person the contract anticipated receiving the benefit of Oakstone's services); *P.N. v. Greco*, 282 F. Supp. 2d 221, 240 (D. N.J. 2003) (finding private school liable on third party beneficiary claim for breach of contract with school district providing for educational services to plaintiff). Unlike the contracts at issue in the cases of *Bishop* and *P.N.*, the Principal Agreement in the instant case does not mention Johnnie by name or provide for his education at VIA. It is not an enrollment agreement. It is a generic funding mechanism through which Greene County CPMT can purchase services from VIA under the CSA ["Comprehensive Services Act," Va. Code Ann. § 2.2-5200, et seq.]. Simply put, it cannot be said that the overriding intent of the parties in executing the Principal Agreement was to ensure Johnnie was educated at VIA. *See Food Lion*, 202 F.3d at 230 (noting that Food Lion's argument that it is a third party beneficiary to the contracts might have merit if the overriding intent of the contracting parties was to make sure Food Lion was fully compensated if one party defaulted (citing *Copenhaver*, 238 Va. at 368-69, 384 S.E.2d at 597)).

In fact, a Principal Agreement was executed by Greene County CPMT and VIA long before Johnnie enrolled at the private school. The parties executed this same generic contract[20] in 2005 when another Greene County student was placed at VIA. Plainly, the contracting parties did not intend to directly benefit any specific individual student. *See Frank Brunckhorst Co., LLC v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 459-60 (E.D. Va. 2008) ("Because Coastal Real Estate did not exist when Coastal and Brunckhorst entered into the distribution relationship, it clearly could not have been contemplated as a beneficiary of the contract agreed to by Coastal and Brunckhorst."); *Caudill v. County of Dinwiddie*,

---

[20] The magistrate judge noted that "[t]he 2005 Principal Agreement and the 2007 Principal Agreement contain essentially the same terms. (*Compare* Docket #127, Ex. D *with* Ex. H.)"

259 Va. 785, 794, 529 S.E.2d 313, 317 (2000) (finding no provision of contract clearly and definitely showed intent to confer benefit on bondholders or Trustee and noting, "the Trustee and bondholders did not even exist when those contracts were executed."). This agreement is merely the contracting vehicle through which various agencies purchase services for disabled or at-risk youth. The specific agency purchasing services in this case – Greene County School Board – is not a party to the agreement. The contracting party is Greene County CPMT, which is made up of a number of different agencies, all of which can use this form agreement to purchase services from private entities. (*See, e.g.*, Docket #138, Ex. D, Ex. F.) Moreover, no Principal Agreement was executed for the 2006-2007 school year, even though Johnnie remained enrolled at VIA. The 2007 Principal Agreement at issue was not executed for over a year after Johnnie began school at VIA.

On the other hand, the Principal Agreement provides for issuance of a PSO, which refers to Johnnie by name and authorizes certain units of educational services to be provided by VIA. (Docket #127, Ex. I.) Taking the Principal Agreement and PSOs together, Johnnie was arguably an intended beneficiary of the contract.

This case presents a close question of law as to whether Johnnie is a third party beneficiary of the Principal Agreement and corresponding PSOs. Even assuming that he is so, however, it is recommended that the claim against VIA be dismissed as it is clear that there was no actionable breach of contract in this case.

(Docket no. 199, at 38-42.)

Plaintiffs assert that "there is no evidence in the record of any other reason for which Greene would have entered into a Principal Agreement than to pay for Johnnie's education." (Docket no. 199 at 19.) This is incorrect. The 2005 Principal Agreement, which was entered into in July 2005 before Johnnie even applied to VIA, demonstrates that Greene CPMT entered into Principal Agreements for reasons other than "to pay for Johnnie's education." Indeed, there was no Principal Agreement during the 2006 school year (while Johnnie attended VIA), which suggest that the connection between the Principal Agreements and Johnnie Smith's enrollment is attenuated, at best. The 2007 Principal Agreement could have covered any Greene County student enrolled at VIA, as the 2005 Principal Agreement did. By their very terms, the 2005 and

2007 Principal Agreements did not provide for the education of any particular student, but instead set up the structure by which Greene County could purchase services from VIA. I conclude, as Judge Urbanski stated, that in executing the 2007 Principal Agreement, "the contracting parties did not intend to directly benefit any specific individual student. . . . This agreement is merely the contracting vehicle through which various agencies purchase services for disabled or at-risk youth." (Docket no. 194 at 41.)

Plaintiffs argue that it is "misleading to interpret the Principal Agreement or the Purchase Service [sic] Orders (PSOs) without considering them as a whole." (Docket no. 199 at 19.) However, the documents have been so considered. Judge Urbanski carefully examined and discussed the 2007 Principal Agreement, the 2005 Principal Agreement, and the related PSOs. (Docket no. 194 at 34-36, 42.) Contrary to plaintiffs' allegations, he thoroughly examined plaintiffs' third party beneficiary claim, and was not convinced that Johnnie Smith was a third party beneficiary of the 2007 Principal Agreement. However, the magistrate judge found that, for entirely separate reasons, plaintiffs could not maintain an actionable breach of contract claim in this case (because the Principal Agreement does not confer IDEA liability on VIA, VIA did not breach the termination provision of the contract, and plaintiffs failed to establish a colorable claim for damages). He was correct in so determining; furthermore, based on my review, plaintiffs were not third party beneficiaries of the 2007 Principal Agreement. There is no basis for me to conclude otherwise.

**6.**

Regarding the court's exercise of supplemental jurisdiction in retaining VIA's state law counterclaims, plaintiffs object on the ground that

VIA asks that the Court exercise supplemental jurisdiction over claims that involve wholly unrelated claims. Under the [report and recommendation], the Court would retain jurisdiction over the state law . . . claims with no basis for federal jurisdiction over any remaining claims. VIA has failed to establish that the claims are compulsory (Plaintiffs have not brought similar claims in this action), and it has not met any of the requirements of *Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988).

Federal courts have supplemental jurisdiction over state law claims under 28 U.S.C. § 1367 when "[t]he state and federal claims . . . derive from a common nucleus of operative fact" such that "the entire action before the court comprises but one constitutional case.'" *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). This requires that the supplemental claim "need only revolve around a central fact pattern" with the federal claim. *White v. County of Newberry, S.C.*, 985 F.2d 168, 172 (4th Cir. 1993). Supplemental jurisdiction embraces all claims with a loose factual connection to the jurisdiction-invoking claim." 13D Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 3567.1 (3d ed. 2008). Compulsory counterclaims under Fed. R. Civ. P. 13(a) always satisfy § 1367(a)'s "same case or controversy" standard because they must satisfy the more stringent requirement that the counterclaim arise out of the same "transaction or occurrence" as the jurisdiction-invoking claim. 13D Wright and Miller, *Federal Practice and Procedure* § 3567.1.

Judge Urbanksi analyzed whether supplemental jurisdiction existed over VIA's defamation counterclaim under the more stringent Rule 13(a) compulsory counterclaim standard, correctly applying the four-factor test of *Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988): (1) whether "the issues of fact and law raised in the claim and counterclaim" are "largely the same"; (2) whether *res judicata* would "bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule"; (3) whether "substantially the same evidence" will "support

or refute the claim as well as the counterclaim"; and (4) whether there is "any logical relationship between the claim and counterclaim."

VIA's defamation counterclaim involves nearly identical factual considerations as plaintiffs' claims. For example, plaintiffs alleged in this lawsuit that "VIA's Executive Director and Board of Directors engaged in precisely the reprehensible discrimination toward students with disabilities that the Supreme Court found Congress had made illegal"; VIA alleges that plaintiffs defamed VIA when they published statements that VIA refused "to hear criticism of VIA's management, leadership, and direction from interested parties." Plaintiffs alleged in the instant lawsuit that VIA's "offensive conduct is not legal today in the United States. . . . This discrimination violated federal and state laws"; VIA alleges that plaintiffs defamed VIA when they published statements that VIA operated in violation of federal and state law. Plaintiffs alleged in the instant lawsuit that "VIA's management and staff intentionally created a demonstrably hostile educational environment for [Johnnie Smith] and did not comply with Johnnie [Smith's] IEP"; VIA alleges that plaintiffs defamed VIA when they published the statement that VIA "fail[ed] to protect the rights and needs of its students and families, meeting the expectation of and respect for sensitivity to the rights of children with disabilities expected by parents, donors, autism advocates, and community supporters."

The facts underlying plaintiffs' allegations and VIA's counterclaims arise from the same evidentiary discussion. The magistrate judge was correct in finding that VIA's defamation counterclaim is compulsory.

Moreover, even if the counterclaim were not compulsory, VIA's claim satisfies § 1367(a)'s "same case or controversy" standard because it "revolve[s] around [the same] central fact pattern" as plaintiffs' claims. *White*, 985 F.2d at 172. Given the factual similarities between

plaintiffs' claim and VIA's defamation counterclaim, plaintiffs' statement that VIA's defamation counterclaim is "wholly unrelated" to its claim against VIA is without merit. *See also, e.g., Brenco, Inc. v. Roller Bearing Indus., Inc.*, 92 F.3d 1176 (Table), 1996 WL 436563, at *3-4 (4th Cir. 1996) (exercising supplemental jurisdiction over a defamation counterclaim as supplemental to plaintiffs' federal Lanham Act claim); *McBride v. City of Roanoke Redevelopment & Hous. Auth.*, 871 F. Supp. 885, 887-93 (W.D. Va. 1994) (exercising supplemental jurisdiction over a state-law defamation claim that arose out of the same case or controversy as the federal claims).

The magistrate judge was correct in concluding that the counterclaim is compulsory and that the court has supplemental jurisdiction. And, although I may decline to exercise jurisdiction pursuant to 28 U.S.C. § 1367(c)(3), given that I have dismissed all claims over which the court has original jurisdiction, I agree with Judge Urbanski that, in light of this "court's long history in dealing with this case, its familiarity with the alleged facts and study of the applicable law . . . it is appropriate to retain and adjudicate the remaining" state law counterclaims.

## VI.

For the heretofore stated reasons, all but one of the objections are overruled. Specifically, I will sustain only VIA's objection (docket no. 197) to the magistrate judge's recommendation that plaintiffs' motion to dismiss (docket no. 96) be granted as to VIA's counterclaim of fraud. Otherwise, I will adopt the report and recommendations (docket no. 194) submitted in this case on December 8, 2009, by United States Magistrate Michael F. Urbanski. Accordingly, the motion for summary judgment (docket no. 124) filed by Greene County will be granted; plaintiffs' motion for partial summary judgment for denial of a free and appropriate public education to plaintiff Johnnie Smith (docket no. 160) will be denied; the motion for summary judgment (docket no. 126) filed by VIA will be granted; plaintiffs' motion for partial

summary judgment on contract claims (docket no. 161) will be denied; VIA's motion for leave to file deposition transcript under seal (docket no. 184) will be denied; and plaintiffs' motion to dismiss (docket no. 96) VIA's counterclaims (docket no. 89) will be denied. The court will exercise its supplemental jurisdiction and retain the defamation and fraud counterclaims (docket no. 89). Additionally, VIA's motion for leave to amend its complaint (docket no. 198) will be granted, and Plaintiffs' "motion for leave to file demonstrative exhibit" (docket no. 202) will be denied.

The Clerk of the Court will be directed to send a certified copy of this memorandum opinion and the accompanying order to the pro se plaintiffs, to all counsel of record, and to United States Magistrate Judge Michael F. Urbanski.

Entered this <u>26th</u> day of March, 2010.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE