IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JOHN SMITH & MARY SMITH, | ) |
| | ) |
| Plaintiffs/Counter-Defendants, | ) |
| | ) Civil Action No. 3:08cv00030 |
| v. | ) |
| | ) |
| THE JAMES C. HORMEL SCHOOL | ) By: Michael F. Urbanski |
| OF THE VIRGINIA INSTITUTE OF | ) United States Magistrate Judge |
| AUTISM, | ) |
| | ) |
| Defendant/Counter-Plaintiff. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on defendant/counter-plaintiff The James C. Hormel School of the Virginia Institute of Autism's ("VIA") motion to compel certain communications between John Smith and attorney Jerri Katzerman from December 27, 2007 through March 2, 2008. (Docket #222.) A hearing was held on the record on August 10, 2010. By Order entered the same date, plaintiffs/counter-defendants John and Mary Smith (the "Smiths") were directed to produce to the court for <u>in camera</u> review the twenty-one (21) communications at issue, which had been identified for the first time on the Smiths' June 9, 2010 privilege log as attorney-client communications. These documents were filed with the court under seal by Order dated August 12, 2010.

For the reasons set forth below, the court finds that the Smiths failed to comply with the requirements of Federal Rule of Civil Procedure 26(b)(5) by not identifying these email communications on a privilege log in response to VIA's June, 2009 discovery requests. Given the particular circumstances of this case, however, the court declines to hold that the attorney-client privilege has been waived and instead finds a monetary sanction to be appropriate. As

such, VIA's motion to compel is **DENIED** and sanctions are imposed against the Smiths as set forth herein.

## I.

In response to VIA's April 14, 2010 discovery requests, the Smiths provided VIA with a privilege log dated June 9, 2010. This privilege log listed twenty-one (21) emails between Mr. Smith and "Mr. Smith's attorney Jerri Katzerman," identifying those emails as protected from discovery by the attorney-client privilege. According to the privilege log, the emails were exchanged between December 27, 2007 and March 2, 2008 and concern the following subject matter: special education law, the stay put order, the due process complaint and hearing, temporary and alternative placements, and/or FERPA complaints. (Docket #222, Ex. L at 1-5.)

VIA moves to compel production of these communications, arguing any privilege was waived when the Smiths failed to identify the documents in response to VIA's June 19, 2009 discovery requests concerning the underlying Individuals with Disabilities Education Act (IDEA) claim.[1] The Smiths, who at the time were proceeding pro se, did not provide VIA a privilege log in response to the initial discovery requests, nor did they indicate they were withholding any documents based on privilege. VIA argues the Katzerman emails were responsive to the 2009 document requests and should have been identified. VIA further claims the Smiths concealed the existence of these communications with counsel, as evident from Mr. Smith's deposition testimony, in which he stated the Smiths had no counsel during the IDEA due process hearing. VIA asserts that the Smiths' failure to disclose the existence of these communications smacks of bad faith and amounts to waiver of the attorney-client privilege.

---

[1] The court granted summary judgment in favor of VIA and Greene County on the IDEA claim by Order dated March 26, 2010. (See Docket #208.) The court retains jurisdiction over the two remaining state law claims.

For their part, the Smiths argue that only one email between John Smith and Jerri Katzerman could be considered responsive to VIA's 2009 discovery requests. The Smiths claim, therefore, that they were under no obligation to identify the other twenty documents on a privilege log. The Smiths further assert that John Smith did not attempt to conceal his communications with counsel during his deposition testimony, pointing to a passage in which he testified that the Smiths were represented by counsel in dealing with Greene County, who also provided legal advice relating to the matter against VIA. They argue there has been no waiver of privilege.

**II.**

The purpose of the attorney-client privilege is to "'encourage clients to make full disclosures to their attorneys.'" Upjohn Co. v. United States, 449 U.S. 383, 389 (1981) (quoting Fisher v. United States, 425 U.S. 391, 403 (1976)). The privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." Fisher, 425 U.S. at 403. When it applies, "it affords confidential communications between lawyer and client complete protection from disclosure." Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir. 1998). The Fourth Circuit has adopted the following test for determining whether the attorney-client privilege exists:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

Hawkins, 148 F.3d at 383 (quoting United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982) (quoting United States v. United Shoe Machinery Corp., 89 F. Supp. 357, 358-59 (D. Mass. 1950))). The burden of demonstrating a communication is protected by the attorney-client privilege lies with the proponent of the privilege. Hawkins, 148 F.3d at 383 (citing Jones, 696 F.2d at 1072).

In applying this test to the instant case, the court notes with respect to the first prong that the Smiths have provided no evidence to suggest they retained Attorney Katzerman or sought to become her clients. However, "[i]t is not necessary that an attorney-client relation have actually existed. One who consults a lawyer with a view to obtaining professional legal services from him or her is regarded as a client for purposes of the privilege." 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2017 (3d ed. 2010); see also United States v. Cohn, 303 F. Supp. 2d 672, 682 (D. Md. 2003) ("An attorney-client privilege attaches when the attorney is acting to provide primarily legal services, assistance or opinions." (citing Jones, 696 F.3d at 1072)); Trinity Ambulance Serv., Inc. v. G & L Ambulance Servs., Inc., 578 F. Supp. 1280, 1283 (D. Conn. 1984) ("An attorney-client relationship is said to exist when the party divulging confidences and secrets to an attorney believes that he is approaching the attorney in a professional capacity with the intent to secure legal advice."). A review of the documents at issue makes clear that these communications were made by Mr. Smith to a member of the bar of a court[2] in her professional capacity outside the presence of others with the intent of securing legal advice. Indeed, VIA does not dispute the applicability of the privilege to these communications. Rather, VIA asserts that the Smiths cannot claim the protection of the attorney-client privilege in this case, because the privilege has been waived. Because the parties

---

[2] There has been no suggestion made that Attorney Katzerman is not a member of a bar of a court.

4

have raised no issue with respect to the applicability of the privilege, the court assumes without deciding that the privilege applies to these communications and turns to the question of waiver.

**A.**

Federal Rule of Civil Procedure 26(b)(5) requires a party withholding otherwise discoverable information by claiming the attorney-client privilege to (1) expressly make the claim, and (2) described the nature of the communications not being disclosed in a manner that will enable other parties to assess the claim of privilege. Fed. R. Civ. P. 26(b)(5)(A)(ii). "Filing a privilege log has become the 'universally acceptable mean[s] of asserting privileges in discovery in the federal courts.'" Smith v. Café Asia, 256 F.R.D. 247, 250 (D.D.C. 2009) (alteration in original) (quoting Avery Dennison Corp. v. Four Pillars, 190 F.R.D. 1 (D.D.C. 1999)). There is no dispute that the Smiths did not provide VIA with a privilege log or otherwise identify the Katzerman emails as privileged communications being withheld in response to the June, 2009 discovery requests. A privilege log is only required, however, when the information claimed to be privileged is discoverable. See Fed. R. Civ. P. 26(b)(5)(A). Thus, the threshold inquiry in this analysis is whether the Katzerman emails for which the Smiths now claim privilege were responsive to the June, 2009 discovery requests.

VIA argues that the emails were responsive. Specifically, VIA claims that the emails should have been identified in response to request for production number 6, in which VIA asked for "all Documents and Communications relating or referring to Johnnie Smith's dismissal from VIA." (Docket #222, Ex. J at 4.) VIA claims any communications concerning the IDEA due process hearing by their very nature relate to Johnnie's dismissal from VIA. Therefore, the documents identified on the 2010 privilege log noted to be communications involving special

5

education law and various aspects of the due process hearing were responsive to request number 6 and should have been identified back in 2009. The Smiths, on the other hand, argue that only one of the emails – identified on the June 9, 2010 privilege log as document number 19 - could be considered responsive to this document request.

VIA's 2009 document requests seek a broad range of information concerning the underlying IDEA claim. Reading the 2009 discovery as written,[3] especially in light of the definitions that precede the specific document requests, leads the court to conclude that the twenty-one email communications at issue are responsive. For example, document request number 6, to which VIA points, seeks all documents and communications relating to Johnnie Smith's dismissal from VIA. (Docket #222, Ex. J at 4.) "Relating to" is defined in the discovery requests as "referring to, describing, reflecting, containing, embodying, identifying, mentioning, showing, comprising, constituting, discussing, pertaining to, assessing, recording, evidencing, touching upon or summarizing." (Docket #222, Ex. J at 2.) Given this expansive definition, it would be difficult to say that the Katzerman emails are not responsive to VIA's document requests, including – but not limited to – request number 6.

**B.**

The next question is whether the Smiths waived privilege by not identifying these documents back in 2009. "Improper assertion of a privilege may result in a waiver of that privilege." Cappetta v. GC Servs. Ltd. P'ship, No. 3:08cv288, 2008 WL 5377934, at *4 (E.D. Va. Dec. 24, 2008) (citing Eureka Fin. Corp. v. Hartford Accident & Idem. Co., 136 F.R.D. 179, 184 (E.D. Cal. 1991)); see also Rhoads Indus., Inc. v. Building Materials Corp. of Am., 254 F.R.D. 216, 221 (E.D. Pa. 2008) (noting parties that fail to assert the privilege properly may

---

[3] The court does not have before it the responses filed by the Smiths to the 2009 discovery and is not aware of any objections that may have been raised to the scope of the requests. Regardless, the time for hearing any such objections has long passed.

6

waive that privilege (citing Mass. Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n, 914 F. Supp. 1172, 1178 (E.D. Pa. 1996))), clarified by 254 F.R.D. 238 (E.D. Pa. 2008); Herbalife Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., No. 5:05cv41, 2006 WL 2715164, at *4 (N.D. W.Va. Sept. 22, 2006) ("Failure to timely produce a privilege log or the production of an inadequate privilege log may constitute a waiver of any asserted privileges." (citing Atteberry v. Longmont United Hosp., 221 F.R.D. 644, 649 (D. Colo. 2004))). Indeed, while waiver is not mentioned specifically in the text of Rule 26(b)(5), the advisory committee[4] contemplated waiver as a sanction for failure to comply with the rule, stating in its comments in pertinent part, "[t]o withhold materials without such notice is contrary to the rule . . . and may be viewed as a waiver of the privilege or protection." Accord White v. Graceland Coll. Ctr. for Prof. Develop. & Lifelong Learning, Inc., 586 F. Supp. 2d 1250, 1266 (D. Kan. 2008); First Savs. Bank v. First Bank Sys., Inc., 902 F. Supp. 1356, 1361 (D. Kan. 1995), aff'd on reconsideration in 902 F. Supp. 1366 (D. Kan. 1995), rev'd on other grounds, 101 F.3d 645 (10th Cir. 1996) (noting in dicta that the district court committed no reversible error with respect to its orders relating to the discovery dispute).

But waiver is not automatic. First Savs. Bank, 902 F. Supp. at 1361; see also In re Dep't of Justice Subpoenas to ABC, 263 F.R.D. 66, 70 (D. Mass. 2009) (rejecting per se waiver requirement); Carlson v. Freightliner LLC, 226 F.R.D. 343, 363 (D. Neb. 2004) (holding based on the advisory committee comments to Rule 26(b)(5) that a court may - but need not - consider a privilege waived when a party fails to timely raise the objection), aff'd, 226 F.R.D. 385 (D. Neb. 2004). Waiver of privilege is an "exceedingly harsh sanction," Rambus, Inc. v. Infineon Tech. AG, 220 F.R.D. 264, 274, 2004 U.S. Dist. LEXIS 4577 (E.D. Va. 2004), continued consideration provided in 222 F.R.D. 280 (E.D. Va. 2004), that must be determined on a case-

---

[4] Rule 26 was amended in 1993 to add § (b)(5). The advisory committee comments noted are to the 1993 amendments.

7

by-case basis after consideration of all the circumstances. Eureka Fin. Corp. v. Hartford Accident & Idem. Co., 136 F.R.D. 179, 183-84 (E.D. Cal. 1991); Ritacca v. Abbott Lab., 203 F.R.D. 332, 335 (N.D. Ill. 2001) ("In the end, the determination of waiver must be made on a case-by-case basis."); see also Smith v. Café Asia, 256 F.R.D. 247, 250-51 (D.D.C. 2009) (noting court has the discretion to determine that a party has waived privilege when that party fails to produce a privilege log).

Given the sanctity of the attorney-client privilege and the seriousness of privilege waiver, courts generally find waiver only in cases involving unjustified delay, inexcusable conduct and bad faith. First Savs. Bank, 902 F. Supp. at 1361; see Dep't of Justice Subpoenas to ABC, 263 F.R.D. at 71 (stating waiver is appropriate when conduct "evinces a 'deliberate pattern of delay' and is 'egregious'."); Welch v. Eli Lilly & Co., No. 1:06-cv-00641, 2009 WL 700199, at *14 (S.D. Ind. Mar. 16, 2009) (noting waiver is a serious sanction and declining to find the privilege waived despite defendant's inadequate privilege log and failure to meet its burden of proving the documents were indeed privileged); White v. Graceland Coll. Ctr. for Prof. Develop. & Lifelong Learning, Inc., 586 F. Supp. 2d 1250, 1266 (D. Kan. 2008) ("Acknowledging the harshness of a waiver sanction, however, courts have reserved such a penalty for only those cases where the offending party committed unjustified delay in responding to discovery."); Herbalife Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., No. 5:05cv41, 2006 WL 2715164, at *4 (N.D. W.Va. Sept. 22, 2006) (noting some courts have extended waiver of a privilege only to cases involving unjustified delay, inexcusable conduct or bad faith); United States v. British Am. Tobacco (Invs.) Ltd., 387 F.3d 884, 892 (D.C. Cir. 2004) (acknowledging seriousness of waiver sanction); Ritacca, 203 F.R.D. at 335 (noting courts reserve the sanction of waiver for those cases in which the offending party committed unjustified delay in responding to discovery); see also TIG Ins.

8

Co. v. Firemen's Ins. Co. of Wash., D.C., No. 08-0528, 2010 WL 2505878, at *5 (D.D.C. June 22, 2010) ("[T]he court generally does not deem a party to have waived a privilege because it did not provide an adequate privilege log." (citing Café Asia, 256 F.R.D. at 251)).

## C.

VIA urges the court to sanction the Smiths for their violation of Rule 26(b)(5) by deeming the attorney-client privilege waived. VIA asserts the Smiths' conduct smacks of bad faith and specifically points to the following deposition testimony from John Smith:

> Q. So you had no counsel in the underlying administrative due process hearing, correct?
>
> A. I believe we represented ourselves throughout that process.

(Docket #225, Ex. A at 102.) But, as the Smiths point out on brief, Mr. Smith did acknowledge in his deposition that he received the advice of counsel at various times during the litigation process. He testified, "We were represented by counsel in dealing with Greene County, and I believe that that counsel also gave us some legal advice relating to our matter against VIA," stating that he believed that advice was given in "the time period of November 2008, give or take a month or two," while the federal action was pending.[5] (Docket #225, Ex. A at 102.)

Review of the email communications at issue reveals that Mr. Smith indeed sought the advice of counsel during the course of the due process hearing, which was held in early 2008. Therefore, his recollection of the time period in which counsel advised him on matters concerning VIA was incorrect. But, contrary to VIA's assertions, there is nothing in his deposition testimony that leads the court to conclude that Mr. Smith actively tried to conceal the attorney-client communications at issue in the instant motion. Mr. Smith testified that he sought the advice of counsel at certain points in the proceedings and acknowledged that some of the

---

[5] The Smiths filed their IDEA claim in federal court in June, 2008.

9

advice he received might have related to claims against VIA, but he stated he did not recall specifically. (Docket #225, Ex. A at 102-05.)

VIA claims on brief that on June 9, 2010 the Smiths "identified to VIA for the first time twenty-one communications made between John Smith and at attorney, Jerri Katzerman, from December 27, 2007 through March 2, 2008. . . ." (Docket #222, at 6.) While it may be true that VIA first learned in June, 2010 that the Smiths communicated with counsel during this specific time period, VIA was made aware at Mr. Smith's deposition in October, 2009 that the Smiths had communicated with counsel at various times in the process. At one point in the colloquy, counsel for VIA questioned Mr. Smith on why it had not heard previously of any discussions with counsel:

> Q. Why hasn't any of this been disclosed previously?
>
> A. What do you mean?
>
> Q. Regarding your discussions with the attorney at the time. This was the first we had heard of it. Why wasn't any of it disclosed?
>
> A. Will you show me the question that it should have been disclosed under?
>
> Q. In our document production request?
>
> A. Yes.
>
> Q. I'll be happy to -- is it your contention that these documents and discussions were not responsive to our document requests or interrogatories or requests for admission?
>
> A. I don't recall any request that you gave us that related to a subject matter that I discussed with – would have discussed with this lawyer.
>
> Q. Okay. We'll take a look.

(Docket #225, Ex. A at 105-06.) VIA knew in October, 2009 that the Smiths had consulted with counsel at some point in the proceedings but did not (at least to the court's knowledge) follow up with the Smiths with respect to these communications in the discovery process. In fact, the issue does not appear to have been brought up again until the instant motion was filed in June, 2010. It is not entirely accurate for VIA to suggest that it only learned of these communications with counsel when the Smiths' current counsel filed a privilege log in June, 2010, in response to the most recent discovery on the state law claims. Nor can VIA claim it has suffered any prejudice by not learning sooner that certain emails between Mr. Smith and Jerri Katzerman were exchanged around the time of the due process hearing, as VIA prevailed on the IDEA claim.

Of course, the fact remains that the Katzerman emails should have been identified on a privilege log in 2009 and by not doing so, the Smiths violated Rule 26(b)(5). There is no excuse for their failure to comply with the rule, at the very least with respect to the one email they admit was responsive to VIA's discovery requests. Based on the particular circumstances of this case, however, the court cannot find that the Smiths' conduct smacks of bad faith. The court acknowledges that Mr. Smith is a lawyer with extensive litigation experience, but at the time in question, he and his wife were proceeding pro se in this matter. Once the Smiths retained counsel, they promptly identified the email communications on a privilege log in response to VIA's document requests on the state law claims.

To be sure, a finding of waiver can be appropriate when a party fails to properly assert its claim of privilege, as the Smiths did here. But it is not the only available sanction. See Rule 26(b)(5) Advisory Committee comments (1993 Am.) (withholding privileged documents without notification subjects a party to sanctions under Rule 37(b)(2), in addition to risking a finding of waiver); see also Mason C. Day Excavating, Inc. v. Lumbermens Mut. Cas. Co., 143 F.R.D. 601,

610 (M.D.N.C. 1992) ("The filing of inadequate discovery responses, standing alone, will generally not justify a finding that the privilege or work product protection has been waived. It may, however, justify other sanctions.").

As was the court in Welch v. Eli Lilly & Co., No. 1:06-cv-00641, 2009 WL 700199 (S.D. Ind. Mar. 16, 2009), the undersigned is "mindful of the cautionary tone of relevant authority" when it comes to the issue of waiver. Id. at *15. The court is also mindful of the broad, potential consequences of privilege waiver. Given these circumstances, the court declines to find the Smiths waived their attorney-client privilege by failing to produce a privilege log in response to VIA's 2009 discovery requests. The Smiths' discovery violation simply does not warrant such an extreme sanction. See Café Asia, 256 F.R.D. at 251; Carlson v. Freightliner LLC, 226 F.R.D. 343, 363 (D. Neb. 2004) ("Upon weighing the severity of waiving the privilege afforded attorney-client communications and opinion work product against the conduct of the defendant in failing to promptly raise these privileges, I conclude these privileges were not waived under the specific facts of this case."), aff'd, 226 F.R.D. 385 (D. Neb. 2004). Accordingly, VIA's motion to compel (Docket #222) is **DENIED** as regards the twenty-one (21) Katzerman emails.

The Smiths' conduct, however, cannot be ignored and warrants sanction. As noted earlier, despite the fact that the Smiths were proceeding pro se, Mr. Smith has years of litigation experience at a major international law firm. Certainly he is aware of Rule 26(b)(5)'s notification requirement. The Smiths have admitted that at least one of the emails in question was responsive to VIA's 2009 discovery requests. Yet it took them nearly a year to identify it on a privilege log. There is simply no excuse for this delay. As such, the court imposes sanctions against the Smiths in the amount of VIA's fees and costs attributable to moving to compel the

Katzerman emails.  Counsel for VIA are directed to submit an affidavit of its fees and costs within ten (10) days.

It is **SO ORDERED.**

Entered:  September 14, 2010.

/s/ Michael F. Urbanski

Michael F. Urbanski
United States Magistrate Judge